Lamb, trustee, *vs.* Wragg & Stewart.

The last charge given by the court is entirely correct. Let the judgment of the court below be affirmed.

---

LAMB, trustee, *vs.* WRAGG and STEWART.

1. Where property is given or bequeathed to a married woman, without any qua'ification of the manner in which it is to be possessed or enjoyed, it vests, subject to the ordinary legal and marital rights of the husband.

2. But if it appear from the deed, or other instrument which transfers the property, that it was the intention of the donor or testator, that the wife should have an estate therein to her own separate use and disposa', such intention shall take effect, if it be fairly and clearly expressed.

3. The law favors the marital rights of the husband, and will not consider them to be interfered with, by any disposition of property made for the wife's benefit, unless there is a clear exclusion of his interest and control.

4. Where the terms employed by the donor or testator, in a gift or bequest to an unmarried woman, are, that the property shall be "at her own disposa'," or, "for her sole and separate use," the property will vest absolute'y in her as the owner, and it will be subject, upon marriage, to the marital rights of the husband.

5. Much stronger terms are required to indicate the intention of a donor or testator, to continue a distinct estate in an unmarried woman, after she sha'l come under the protection and control of the husband, than in the case of a gift or bequest to a married woman.

6. Where there is no indication of an intention in the deed of gift of slaves, of a father to his son-in-law, in trust, for his

8 P.      10

daughter, that she is to have the slaves at her own disposal, or for her own use, and as her separate property; and no terms to inhibit the husband from disposing of the slaves against the consent of the wife,—the husband must be taken to have acquired an estate for the life of his wife in the slaves, untrammeled by any right of the wife to dispose of them; and the interposition of a trustee, or the fact of the daughter being married at the time of the gift, can make no difference.

7. And where a life estate only is vested in the daughter, with the fee to her children—the children, if there be any, may have recourse to a court of equity, even during the life of the mother, to prevent the removal of the slaves, so as to put in jeopardy their eventual interest.

Error to the Circuit court of Montgomery.

Trial of the right of property, before Judge *Pickens.*

Defendants in error levied an execution upon sundry slaves, as the property of the defendant in the execution, which were claimed by plaintiff in error, as trustee for the wife of the defendant in the execution. Judgment was rendered against the plaintiff in error, who brought the case to this court for review.

On the trial of the case, plaintiffs in execution proved that the property levied on had been in the possession of John J. Lide, the defendant in the execution, and that he had controlled the same. The claimant of the property then produced two deeds, A and B, and proved that John J. Lide had resigned his trust, and that claimant had been appointed trustee to carry into effect the objects of the deeds. Evidence was offered by the claimant, for the purpose of shewing that Alexander Lamb was the owner of the negroes, previous to the execution of the deeds: that John J. Lide brought from South Carolina, in eighteen hundred and twenty-six, those mentioned in the

Lamb, trustee, *vs.* Wragg & Stewart.

first deed:—those mentioned in the last deed had been in possession of Lide for about five years prior to the trial: That there was no concealment in the neighborhood, on the part of the family, of the title under which the property was held, and that the deeds were recorded in Montgomery county, in September, eighteen hundred and thirty-two. The debt of the plaintiffs in the execution was contracted prior to the record of the deed.

Claimant moved the court to charge the jury, that if they believed the negroes were the property of Lamb, at the time of the execution of the deeds, and that he had executed them in good faith—they were sufficient to create a separate estate in the wife; and that the negroes were not liable to payment of the husband's debts. This charge the court refused; and charged the jury, that if the negroes were the property of Lamb, and were conveyed by him in good faith, and Lide entered in possession under the deeds—yet if they had been in his possession for the term of twelve months in this State, and the debts were contracted here, and the deeds were not recorded according to law,—they were subject to the payment of the debts, unless the creditors had notice of the contents of the deeds.

Claimant then moved the court to charge the jury, that if they believed the negroes were in possession of Lide as trustee merely, and that his wife actually enjoyed the benefits provided in the deeds, the property was not liable—which the court also declined. The refusal of the court to charge as desired, was assigned as error.

The deeds, A and B, were similar—deed A was as follows:

"Know all men by these presents, that I, Alexander Lamb, &c. in consideration of the love and affection, which I bear to my daughter Mary Jane Lide, and of one dollar to me paid, the receipt of which is acknowledged, have sold, bargained and delivered, and do hereby bargain, sell and deliver, unto John J. Lide, in trust for my said daughter, for and during the term of her natural life, four slaves, to wit, Beriah, &c., and their increase— and after the death of the said Mary Jane, I give the said negroes and their increase, to such child and children of the said Mary Jane, by the said Lide, as may be living at the death of the said Mary Jane. And I do nominate and appoint John J. Lide, sole trustee, to hold said negroes, and to execute the trust herein-before reposed. To have and to hold the said negroes to the said John, for the purposes herein-before enumerated, *to his* executors, or administrators and assigns. In witness," &c.

*Campbell*, for plaintiff in error.

*Campbell*, for plaintiff, contended that the deeds disclose a clear intention on the part of the grantor, that the beneficial use of the property should be enjoyed by the wife separately from her husband—He is made trustee, which excludes the idea of an usufructuary interest in him.

The term of "the natural life" of the wife, is the period during which his office of trustee is to be exercised, and the period in which such an office is necessary to guard the interests of the wife. Natural love and affection for the daughter of the grantor, is the consideration

on which the deed is founded; and the children of the daughter of the grantor, are the objects of his bounty upon the termination of the life estate of the daughter. No interest is left in the trustee, except during the life of his wife, and the interest is to be held "in trust for the wife"—(3 Bro. Ch. R. 383; Johnes vs. Lockhart, 6 Con. Eng. Ch. R. 448; 2 Atk. 558; 3 Ib. 399; 4 Dess. 458; 2 S. & R. 275; 5 Vesey, 517, 545; 3 Rand. 373; 2 P. W. 316.)

Upon the second question presented by the bill of exceptions, he contended —

That none of the statutes of this state require a deed of trust of personal property, when possession is transferred, to be recorded. That those deeds which are rendered void for want of registration in favor of creditors and purchasers, are still good between the parties—That the creditors and purchasers referred to in those statutes, are creditors and purchasers of the grantor of the deed, and not of any third person who may be in possession of the property—That the term "deeds of trust" in the statute, referred to in the opinion of the Circuit court, means a deed of trust for the payment of debts, and is intended to settle the priority between creditors—and is not applicable to trust deeds in favor of married women, when possession is delivered to the trustee or her husband—(5 Rand. 211; 5 Cranch, 154; 5 Stew. & Por. 142; 7 Peters, 348; 6 Ib. 124; 1 Stew. & Por. 262.)

COLLIER, C. J.—The bill of exceptions, in this case, raises one question, touching which, if our opinion be favorable to the defendants in error, we need not look far-

ther into the points raised at the trial.    That question is
this:  Does a deed of gift, made by a father to a son-in-
law, in trust for his wife,.(the daughter,) for and during
the term of her natural life, and after her death, to such
child or children of their marriage, as may then be liv-
ing, vest a *separate estate* in the wife and daughter for
life?

It may be laid down as a general rule, where property
is given or bequeathed to a married woman, without
any qualification of the manner in which it is to be pos-
sessed or enjoyed, that it will vest subject to the ordina-
ry legal and marital rights of the husband.    But if it
appear from the deed, or other instrument which trans-
fers the property, that it was the intention of the donor
or testator, that the wife should have an estate therein
to her own separate use and disposal, such intention
shall take effect, if it be fairly and clearly expressed.
What terms are necessary to speak such an intention, it
is not always easy to determine.    The books contain
some cases marked by nice distinctions, and the decis-
ions even of the same court upon this subject, have not, in
every instance, maintained uniformity.

In Hartley vs. Hurle, (5 Vesey, jr. 544,) the *Master of
Rolls* decided that a bequest in trust, to pay the annual
produce of a fund created by the testator, *into the proper
hands* of a married woman, was a bequest to her sepa-
rate use.    But in Tyler vs. Lake, (6 Cond. Eng. Ch. R.
450,) it appeared that lands were settled upon trust, af-
ter the death of the settler, to sell the same and distri-
bute the proceeds among all the settler's children *nomi-
natim;* and as to the shares of two who were married

women, the trustees were directed to pay the same "into
their own proper and respective hands, to and for their
own use and benefit;" but in case they should be then
dead, to pay their shares to their respective husbands, for
their own use and benefit.    The Lord Chancellor, in de-
livering his opinion, remarks: "Neither do I think that
the direction which is superadded, 'to pay the shares into
their own proper hands,' either taken singly or in con-
nection with the rest of the clause, is sufficient to create
a separate estate in the wife.    The only authority cited
for such a proposition, is Hartley vs. Hurle, which was a
case under peculiar circumstances, and in which that
was not the point principally considered."

In Lumb vs. Milnes, (5 Vesey, jr. 521,) the *Master of
the Rolls* considered that the mere fact of vesting the es-
tate in trustees for the benefit of the wife, did not create
a sole and separate interest in the wife, and he assumed
that no case had ever gone the length of so deciding.
And in Kensington vs. Dollond, (7 Cond. Eng. Ch. R.
322,) it appeared that by the marriage settlement of a
widow, her property was assigned to two trustees upon
trust, to invest and pay the dividends to her for her life,
for her own sole and separate use, and after her decease,
upon trust, to pay the fund to a daughter by her first
marriage, (who was then married) "for her own use
and benefit."    The daughter's husband becoming bank-
rupt, it was held, that on the death of the tenant, for life,
his assignees were entitled to the fund subject to the
wife's equity for a settlement.    The *Master of the
Rolls* observed, that "the intention to give a separate es-
tate must be clearly expressed.    A gift to a wife for her

Lamb, trustee, vs. Wragg & Stewart.

own use and benefit, does not clearly express such an intention ; nor does a gift to a husband for his wife's own use and benefit, (the husband being one of the trustees of a settlement) clearly indicate such an intention."

The law seems rather to favor the marital rights of the husband, and will not consider them to be interfered with, by any disposition of property made for the wife's benefit, unless there is a clear exclusion of his interest and control—(2 Atk. R. 561 ; 3 Ib. 399.)  In Wagstaff vs. Smith, (9 Vesey, jr. 520,) a trust was created by will to permit a married woman to receive the interest or dividends of stock to her own use during her life, independent of her husband.   The *Master of the Rolls* determined, that by the terms of the trust, an absolute and complete life interest passed to the wife—(See also Lumb vs. Milnes, (5 Vesey, jr. 528.)   And in Jamison's ex'or vs. Brady and wife, (6 Serg. & R. Rep. 466,) it was made a question, whether a bequest to a married woman *for her own use*, conveyed to her an interest *for her own separate use*, and it was adjudged that it did.   The court lay great stress upon the intention of the testator, not alone as it was to be gathered from the will itself, but as it was inferrable from extrinsic circumstances.   It appeared in proof, that the husband was indebted to the testator: this circumstance is remarked upon by the court, as indicating the testator's intention to vest a separate estate in the wife ; otherwise, his bounty would be of no avail to the wife, but would operate rather as a release of the husband's indebtedness.

The cases most favorable to the interest of the wife, are decisions of the Court of Chancery of South Carolina.

In Judith Barrett vs. Judah Barrett, (4 Dess, 447,) a bill was filed by the wife against the husband, to have the benefit of a deed executed between the parties immediately before marriage, which it was alleged was intended to secure the property of the wife in possession, and in expectation, to her separate use. The clause of the deed relied on by the wife as having that effect, was as follows: "The said Judith Barrett, being desirous of settling and limiting her property in a particular way, the property described shall be limited to the said Judith Barrett, during her natural life, and to such issue as she may have by the said Judah Barrett; and in case the said Judah shall survive the said Judith, and she should leave no issue, the whole of the property is to descend to the said Judah." The chancellor who presided on the circuit, held, that this clause vested in the wife a separate estate, but the *Court of Appeals* reversed his decree, maintaining the law to require a clear manifestation of intention to divest the marital rights of the husband, before a distinct interest could be set up in the wife. And in Johnson vs. Thompson, (4 Dess. R. 458,) a case which depended upon the construction of a deed of gift, which a father made of certain personal property, to a daughter who was then a married woman—Her husband disposed of the property.—The complainants, who were the children of the donee, contended that their grand-father intended to give a separate estate to their mother, not subject to the debts or disposition of her husband. The Court of Appeals determined, that "the property in dispute being given to the mother of the complainants after marriage, it may be fairly inferred from the words of

8 P.                    11

Lamb, trustee, *vs.* Wragg & Stewart.

the deed, that the intention of the father, the donor, was to give to her a separate estate, which her husband had no right to dispose of, in any manner." What the "words of the deed" were, the report no where informs us, and the learned reporter, in his head note, leaves it very clearly to be inferred, that the fact of the daughter being a married woman at the time of the gift, sufficiently indicated the father's intention to vest in her an estate to her separate use, yet the decree could not have been influenced by that consideration—if it was, it may at least claim the merit of novelty, while it stands unsupported and insupportable.

A distinction has been often taken between a gift or bequest to a married woman, and a gift or bequest to one who is unmarried, unless it is made in contemplation of an immediate marriage, and with a view to a provision for that event. In the case of the unmarried woman, much stronger terms are required to indicate the intention of the donor or testator to continue a distinct interest in herself, after she shall come under the protection and control of a husband. If the terms employed are, that the property shall be "at her own disposal," or "for her sole and her separate use," the property would vest absolutely in her as owner, and upon marriage, would not be holden otherwise than as her other absolute estate ; but would be subject to the marital rights of the husband—(2 Story's Equity, 610, 611, and cases there cited.)

In the case at bar, we have cited quite a number of authorities, not because we have thought it necessary to the understanding of the principle of our opinion, but

Lamb, trustee, *vs.* Wragg & Stewart.

that the course of judicial decision upon this interesting question should be seen. There is not the slightest indication of intention in either of the deeds of Alexander Lamb, that his daughter should hold the slaves at her own disposal, or for her own use, and as her separate property; nor are there any terms to be found in either of them, which would inhibit the husband from disposing of the slaves, against the consent of the wife. The husband, then, must be taken to have acquired an estate for the life of his wife, in the slaves in controversy, by virtue of the gifts to himself in trust for her, untrammeled by any right of the wife to dispose of them. The interposition of a trustee, or the fact of Mrs. Lide being married at the time of the gifts, we have shown could make no difference, and consequently the slaves are liable to levy and sale to pay the husband's debts. If there be any children of the marriage of John J. Lide and his wife, a court of equity will be open to their relief, by interposing even during the life of the mother, to prevent a removal of the slaves, so as to put in jeopardy the enjoyment of their eventual interest.

Our conclusion on this question is decisive of the case, and relieves us from considering the other points presented by the bill of exceptions. The judgment is affirmed.