BRANCH BANK AT MONTGOMERY v. WILKINS.

1. A settlement by a husband after marriage of the property thereby acquired to a trustee, for the joint use of himself and wife, for their lives, with remainder for life to the survivor, and remainder in fee to the issue of the marriage, is not the conveyance of a separate estate to the wife, but the husband has under the deed an estate for life.

2. Such an estate is subject to execution and sale for the debts of the husband ; the deed containing a stipulation that he shall have the possession, and be entitled to the rents and profits.

Writ of error *to* Circuit Court of Coosa.

CLAIM of property interposed, under *the* statute, by Thomas T. Wilkins as trustee of Ann T. Wilkins, to a slave levied on by the sheriff of Coosa, by virtue of an execution, at the suit of the Bank, against the goods, chattels, &c., of Thomas G. Wilkins, Thomas T. Wilkins, and William L. A. McLeray. An issue was made up between the parties, and at the trial, the claimant, to support his claim as trustee, gave in evidence a deed executed by himself, in the year 1834, in the State of Georgia; which deed recites, "that forasmuch as a marriage ceremony had recently been had, joining together in the holy bands of wedlock, the said Thomas T. Wilkins and Ann Lowe, whereby she has become the wedded wife of Thomas T. Wilkins, and whereby the said Thomas T. Wilkins has acquired by marital right, a considerable estate, consisting of land and negroes, lately the property of the said Ann T. Lowe. Now, in consideratioh of the sum of five dollars by Eli E. Gaither *to* the said Thomas T. Wilkins, paid, &c., the said Wilkins bargained, sold, and conveyed, to the said Gaither, as a trustee, for the purposes and uses hereinafter set forth and specified, all the lands and negroes formerly belonging to his said wife, the said Ann T., and now belonging to him in right aforesaid, as well as all his, or her interest, derived as aforesaid, in and to the lands and negroes of which she held and claimed an undivided share, jointly with her brother, William J. Lowe; and forasmuch as her part, now his, cannot now be identified by name, age, or sex, as to the negroes; or by quality, quantity, metes or bounds, as to the lands, it is hereby specified and declared, that the same shall and may be herein inserted, for the purposes of future identification, reference being had to the division hereafter to take place, between the said Thomas T., in right of his said spouse, the said Ann T. and the said William Lowe."

The uses and purposes are thus declared: "To have and to hold, &c., for the joint benefit, use and behoof, of the said Thomas T. and Ann T., during their joint lives; and afterwards, to the use, benefit and behoof of the survivor and their children, issue of the said marriage: and in case of the death of either leaving no issue, or possibility of issue, of theirs,

children of the said Thomas T. by the said Ann T., then to the proper and only use, benefit and behoof of the survivor of them, and to his or her heirs forever. And it is hereby set forth, declared, stipulated, and confirmed by and between the said parties, First—That the possession and occupancy of the said property, shall be and remain with the said Thomas T. Secondly—That the said Thomas T. shall, and may receive, and control the rents, issues and profits thereof, to himself and family, during the coverture or marriage, in such manner, consistent with the premises, as may be best. Thirdly —In case the said parties shall agree upon the propriety or expediency of selling, or conveying any portion, or part of the said property, the same may be done by the said trustee, he applying the proceeds to the purchase of other property, to be settled to like uses. Fourthly—The said Thomas T. doth relinquish and release, to the said trustee, all right or power to sell, alien, or convey any part, or all of the said property, except for the purpose, and in manner aforesaid."

It was in proof, that Gaither resigned as trustee in 1839, and that the claimant was then appointed trustee by order of the Court of Chancery for Putnam county, Georgia. Also, that the slave levied on was one of the slaves mentioned in, and sought to be conveyed by the trust deed.

The cause was put, by the parties, to the jury alone, on the force and effect to be given to the deed of trust—the claimant contending, that it protected the property from sale for his individual debts; and the plaintiff insisting, there was nothing in its terms to forbid the property being sold under execution for Wilkins' debts.

The Court charged the jury, that the law arising on the deed was with the defendant.

To this the plaintiff excepted, and the charge is assigned as error.

Morris, for the plaintiff in error, cited Harkins v. Coulter, 2 Porter, 463; Nelson, Carleton & Co. v. Banks, June Term, 1844,

No counsel appeared for the defendant.

GOLDTHWAITE, J.—The decision of the Circuit Court, sustaining the title of the claimant to the slave in controversy,

may have been made with relation to the quantity of interest which the defendant in execution had under the deed; or it may have been made with reference to the distinction between an equitable and a legal estate. We shall consider the cause in both aspects.

There is nothing upon the deed itself to induce the conclusion, that the husband either intended to convey, or supposed he was actually conveying, an estate in trust for the separate use of his wife. The deed recites, that a marriage had recently been solemnized, and that by it in right of his wife, he had been invested with a right to certain real and personal estates. Its object was, to settle these estates in a manner different from that in which the law had already disposed of them. In other words, he wished to make a marriage settlement, and to effect this purpose, he conveys his interest to a named trustee, who is thereby invested with the legal title, but subject to certain uses declared by the deed. Instead of retaining the absolute estate in himself, he declares it shall be a joint estate to himself and wife, with remainder to the survivor for life, and a further remainder in fee to the issue of the marriage. If the intention was to create a separate estate to the wife, or even an estate for their joint maintenance during their lives, it was as easy to have declared this intention as any other; but this was not the intention of the husband, as is evident from the first and second conditions imposed on the grant in which he stipulates, not only that he shall remain in possession of the estates, but that he shall receive and control the rents and profits. It would be strange indeed, as is remarked by this Court in Harkins v. Coulter, 2 Porter, 463, if such terms could be construed to mean, a separate estate in the wife.

We are aware that the Court of Appeals of Virginia in two cases, have held, that slaves settled to the joint use of the husband and wife during coverture, with remainder for life to the survivor cannot be reached by a creditor. [Scott v. Gibbon, 5 Mum. 86; Roanes v. Archer, 4 Leigh. 550.] But the first of these cases received a very slight consideration on this point, and the last is put upon the previous decision without any consideration whatever. We are all aware how firmly even an erroneous principle becomes fixed by decision, when it enters into the legal assurances of the property of a State. In

our own State a different result was arrived at in the case of Harkins v. Coulter, before cited, which would greatly influence us, even if our own judgment did not concur, though the case here differs from that, inasmuch as here the husband is the grantor. We are clear in the opinion, that the husband must be considered as entitled to a life interest in the slave under the deed. What will be the interest of his wife or children, if they survive him, we need not now consider.

The other view of the case is settled by the decision at the last Term, in the case of Nelson, Carleton & Co. v. Banks, where a similar interest conveyed to a trustee for the use of a lady, who afterwards married, was held to be liable at law to an execution against the husband. I dissented, in that case from a majority of the Court, on the ground, that the wife had only an equitable estate in the slave, which would be protected in equity against an insolvent husband or his creditors; but I concurred very fully in the opinion, that if the estate could be subjected in equity, there was no reason why a creditor might not attain the same result at law. In this case, conceding the legal estate to be in the trustee, the creditor could, in a Court of Equity, subject it to his debts; therefore, I concur here, that such may be the result of a levy.

The consequence of what we have said is, the reversal of the judgment, and the remanding of the cause.