## COOK v. KENNERLY & SMITH.

1. An *ante*-nuptial contract, by which the wife, before the marriage, conveyed certain slaves, and other property to trustees in trust, "to the use of the said C. B. S., and her intended husband, J. C. K., during their natural lives, at the death of either, then to the use of the survivor during his, or her life; at the death of such survivor, then to such child, or children of the said C. B. S., and the lineal descendants of such child, or children as may be then living, to them and their heirs forever; but should there be no child, or children of the said Catherine, nor lineal descendant living at the time of the death of such survivor, then the said property to be equally divided among the next of kin of the said C., who may then be living, to them and their heirs forever. Yet the said C. may, notwithstanding her coverture, by any writing under her hand and seal, attested, &c.; or by her last will, &c., bequeath, or leave any of the aforesaid slaves, or all of the same, to her said intended husband, or any other whatsoever"—does not give the wife a separate estate in the property conveyed, but creates a joint estate in the property in the husband and wife during their lives, with remainder to the children: and after it is reduced into possession by the husband, is subject at law to the payment of his debts; a sale under execution, conveying to the purchaser the life estate of the husband, and of the wife during his life.

2. The law of South Carolina, where the deed was made, requires such instruments to be recorded, and for want of such registration, declares them void, as to creditors, but that as between the parties to the deed it shall be valid without registration. Held, that the provision in relation to creditors, had no *extra territorial* efficacy as a law, and only applied to debts created, or attempted to be enforced, in South Carolina.

3. When slaves are conveyed in trust for the use of another, he is entitled to the possession to make the use effectual, unless the deed expressly declares the *cestui que trust* is to be entitled only to the profits. The employment in the deed, of the term "in their actual possession," would not justify the trustees in withholding the possession from the *cestui que trust*.

3. The possession of the *cestui que trust*, is not within the second section of the statute of frauds. *Quere*, would it not apply to a trustee, who retained possession of the trust estate, without registration of the deed.

Error to the Circuit Court of Lauderdale.

DETINUE by the defendant in error.

From a bill of exceptions, found in the record, it appears that the plaintiff in error, as sheriff, had levied on a number of slaves, by virtue of an execution against James C. Kennerly, and that the action was commenced by the plaintiffs below, as trustees of Catherine Kennerly, wife of James C. Kennerly, and relied on a deed, made previous to the marriage, in the State of South Carolina; to which both the husband and wife were parties, the material parts of which are as follows:

This indenture, made the 15th May, 1827, between James C. Kennerly of Lexington district, physician, of the first part, Catherine B. Smith of Charleston district of the second part, and James Kennerly, Benjamin Smith, and Thomas J. Smith of the third part. Whereas, a marriage is intended to be shortly had, and solemnized, between James C. Kennerly and Catherine B. Smith; and whereas, the said Catherine is possessed of a considerable personal estate, consisting of the following slaves, to wit: Peggy, &c., &c. And is also entitled to an undivided moiety of the negroes, late the property of Francis Charlotte Smith, a deceased sister of the said Catherine, which she inherited from her father. And whereas, the said Catherine, being aware of the many pecuniary accidents and misfortunes, which occur even to the most prudent and considerate, is willing, and desirous of having the said property settled, and secured, in such manner, and to and for such uses, as shall be hereinafter mentioned, he, the said Jas. C. Kennerly, having previously, and voluntarily consented thereto, and now being privy to the same. This indenture therefore witnesseth, that for and in consideration, &c., the said Catherine B. Smith hath given, &c., to the said James Kennerly, Benjamin Smith, and Thomas J. Smith, in their actual possession, all the negro slaves above named, with the undivided moiety of the personal estate of Frances C. Smith, as before described, together with the future issue, and increase of the female slaves, to have and to hold, all and singular, unto them, &c. In trust however, and to and for the uses following, and for no other use, interest or purpose whatsoever. That is to say, first, to the use of her, the said Cath-

erine B. Smith, and her said intended husband James C. Kennerly, during theit natural lives, at the death of either, then to the use of the survivor, during his, or her life ; at the death of such survivor, then to such child, or children of the said Catherine B. Smith, and the lineal descendants of such child or children, as may be then living, to them and their heirs forever. But should there be no child, or children of the said Catherine, nor lineal descendant living at the time of the death of the said survivor, then the said property to be equally divided, among the next of kin of the said Catherine, who may then be living, to them and their heirs forever. Yet the said Catherine shall, notwithstanding her coverture, by any writing, or writings, under her hand and seal, attested by two or more credible witnesses, or by her last will and testament in writing, duly executed, bequeath or leave any of the aforesaid slaves, or all of the same, to her said intended husband or any other person whomsoever. And nothing herein contained shall be so construed, as to prevent the said Catherine from disposing of by will, deed, or otherwise, all or any part of the above mentioned property, the right of which to be transferred after her decease. In witness whereof, &c.

This deed was proved, and recorded, in the office of the Secretary of State of South Carolina, on the 29th June, 1827. It was proved, that the parties were married on the day of the execution of the deed, and continued to reside in South Carolina from that time, until the year 1835, when they removed to Franklin county, Alabama, where the plaintiff James Kennerly resided, and where they continued to reside, until the levy upon the slaves. The plaintiff proved they were the same slaves mentioned in the deed; that Kennerly and his wife are yet living, and have children. The plaintiff also read copies of the acts of the Legislature of South Carolina, passed 8th March, 1785, of the 21st December, 1792, and of the 20th December, 1823.

The plaintiff also proved, that one of the trustees had possession of the slaves for two years, after the execution of the marriage contract, in the State of South Carolina ; that they were then delivered into the hands of James C. Kennerly, the

husband, who has retained possession of them from that time down to the levy.

The defendant produced, and read, sundry writs of *fieri facias*, and of attachments levied on said slaves, and proved, that these debts were contracted by J. C. Kennerly, after his removal to Alabama, and while he was in undisturbed possession of the slaves.

The defendant offered to prove, by a witness, that the husband, J. C. Kennerly, and James Kennerly, the trustee, had concealed the slaves, and endeavored to run them off, to prevent their being levied on, and that at the time of the levy, they were found concealed in the house of the trustee, but the court rejected the testimony, holding that the acts and admissions of the husband, or trustee, could not affect the rights of Mrs. Kennerly, under the deed; and the defendant excepted.

The plaintiff, by way of rebutting proof, produced and read, a statute of South Carolina, passed 20th December, 1832.

The court then charged the jury, that if they believed the evidence, the deed, although not registered in South Carolina, was valid between the parties, and valid in Alabama, as to all the world, unless the creditors in the executions were South Carolina creditors. That the statute of frauds, did not require the deed of marriage settlement, under which the plaintiff claimed, to be recorded in this State. That the husband had not such an interest in the property, as could be sold under execution, and that the rights of the wife could not be affected by the acts of the trustees; and if they permitted the husband to have the possession of the property, it did not affect the rights of the wife.

The court refused, on motion of the defendant, to charge, that the power of revocation reserved to the wife in the deed, avoided it, as to creditors and purchasers. That the permissive possession of the husband, was a loan by the trustees, and if continued for more than three years, without registration, or without demand made, and pursued by due course of law, the slaves were liable for the debts of the husband, under the second section of the statute of frauds. That the deed is void in favor of creditors, as to the slaves mentioned

in the deed, as constituting an undivided moiety of the estate of Frances C. Smith, under the act of South Carolina, of 21st December, 1792. To the charges given, and to those refused, the defendant excepted, and now assigns for error, the matters of law arising out of the bill of exceptions.

J. A. Nooe and J. B. Sale, for plaintiff in error.

L. P. Walker and J. W. McClung, contra.

ORMOND, J.—The interesting question here presented, is one which has frequently engaged the attention of this court, and settled, so far as the decisions of this court can settle any legal principle, commencing with the case of Harkins v. Coalter, 2 Porter, 463, and running through most of the subsequent volumes. The uniform tenor of these decisions is, that to exclude the husband from the enjoyment of the estate, and prevent his marital rights from attaching upon it, there must be a clear and manifest intent to create a separate estate in the wife. [Lamb v. Wragg and Stewart, 8 Porter, 73; Dunn and wife v. The Bank of Mobile, 2 Ala. 152; Inge v. Forrester, 6 Ib. 418; Bank v. Wilkins, 7 Id. 589; O'Neal v. Teague, 8 Id. 345.]

It is an inseparable incident, of a separate estate in the wife, that the husband has no control, or dominion over it. As to that estate, she is considered, and treated, as a *feme sole*, and hence, in many of the cases cited, the wife was held not to have a separate estate, although the conveyance was to a trustee for her use, because, although no estate, or interest was in terms secured to the husband, by the deed, his control, or dominion over it, was not necessarily excluded. This case, however, is free from the difficulty which existed in those referred to, as an express estate for life, is guarantied to the husband, in the slaves and other property, which is utterly hostile to the idea of the wife having a separate estate in the same property.

But it has been strenuously argued, that from the recitals of the deed, and the manifest design evidenced by making the deed, as shown from the surrounding circumstances, it was evidently the interest of the parties to create such an estate as should not be subject to alienation by the husband, or

liable for his debts; and that this intent, when ascertained, will control the language employed by the parties. There can be no doubt, it is the intent of the parties which is to govern the construction of the deed, and that the intent, when ascertained, if lawful, will be enforced. It is also true, that no particular form of words is necessary to the creation of a separate estate in the wife. But this intent to exclude the marital rights of the husband, must be evinced by the language employed in the creation of the estate. The surrounding circumstances, such as the insolvency, or straitened condition of the husband, and the fact even that the husband and wife are parted, will not be sufficient evidence of an intent to create a separate estate in the wife, in the absence of language evidencing such an intent, in the creation of the estate. [Palmer v. Trevor, 1 Vern. 261; Harkins v. Coalter, *supra*, and many other cases decided in this court; Clancey on Rights, 263; and 2 Story Eq. § 1381-2, and cases cited Brown v. Clark, 3 Vesey, 166; Adamson v. Armitage, 19 ed. 416; Maberry v. Neely, 5 Hump. 337; Wills v. Sayers, 4 Madd. 409; Roberts v. Spicer, 5 Id 491; Lumb v. Milnes, 5 Vesey, 517.]

If the surrounding circumstances could be looked to, to control the language employed in the deed, it would avail nothing in this case. The purpose avowed in the deed, is to secure the property against accident, or misfortune, and as it was made on the eve of marriage, the intention doubtless was, to prevent the property from being wasted, by the improvidence or prodigality of the husband. How did they undertake to accomplish this? Not by excluding the marital rights of the husband, and vesting the wife with a separate estate, for this is sedulously guarded against, by giving the use of the property to the husband and wife, during their lives, and the life of the survivor, with a power of alienation to the wife, to take effect after the death of herself, and husband. The language of the deed, then, is in direct accordance with the avowed, as well as the probable intentions of the parties; and it is a perfectly gratuitous assumption, that they intended to create a separate estate in the wife. They doubtless intended to create an unalienable estate, and have employed language appropriate to their intentions. It cannot

avail the parties, that this intention is one which the law will not enforce, and that the husband will take the property discharged from this illegal condition. This is a consequence which flows from their acts, and they cannot be heard to say, they did not intend the consequence which their deliberate act imports.

One of the inseparable incidents of the ownership of personal property is, that it shall be liable for the debts of the owner, and that a restraint upon its alienation is void. Brandon v. Robinson, 18 Vesey, 429. An exception obtains, in the case of the separate estate of a married woman, which it appears, may be so secured, that the wife herself has not the power to alienate it. [Tullet v. Armstrong, 1 Beavan, 3.] But what right has this court to say, in opposition to the express language of the deed, that the husband was to have no interest in the property? How can it now be known, that he would ever have consented to the creation of an unalienable, separate estate in the wife?

If this is not the separate estate of the wife, it is liable at law to the debts of the husband, having been reduced to his possession. This follows necessarily from the established law, that the chattel interests of the wife, when reduced to the possession of the husband, are his property. There is no such thing known to the common law, as a partnership, or community of goods between husband and wife. In law they constitute but one person, and cannot hold, either as joint tenants, or as tenants in common. If, therefore, there be a conveyance of land, to husband and wife, each is seized of the whole. In the technical language of the books, they are seized *per tout* and not *per my*. [2 Black. Com. 182; Doe ex dem. De Peyster v. Howland, 8 Cow. 277; Barber v. Harris, 19 Wend. 617.] As a consequence of this doctrine, if a conveyance were made of lands to husband and wife, and a third person, the husband and wife would take but one half the land, and the third person the residue. In the case supposed of a conveyance of land to husband and wife, the husband could undoubtedly dispose of the estate of his wife in the land, during his own life, and accordingly, in the case of Barber v. Harris, *supra*, it was held, that he could mortgage it for that period. This being

Cook v. Kennerly & Smith.

the law, as to the life estate of the wife in land, *a fortiori*, must it be the law, when it is a chattel interest; reduced to the possession of the husband.

There is however, a class of cases, with which this must not be confounded—these are those where an interest in property is given collectively, to a married woman and her children, for their support, and maintenance. In this class of cases, if the husband, in virtue of his marital rights, has an interest in the property, it cannot be subjected at law to the payment of his debts, but his interest, (if any he has,) can only be reached in equity, where the respective interests of the wife, and children, can be ascertained, and separated. The case of Fellowes and others v. Tann, 9 Ala. 1002, and Spear v. Walkley, 10 Ala. 328, are of this description. In both of these cases, it was held, the interest of the husband could not be sold at law, as that would destroy the trust; and in both, the question was left open, whether the husband had such an interest as could be reached in equity. See also the case of Rugely & Harrison v. Robinson, 10 Ala. 702, where a kindred question was discussed at great length.

The facts of this case are entirely different. This is the creation of a life estate in the husband and wife, with a remainder to the children. They have no interest whatever in the slaves, which are the subject of the conveyance, during the lives of their parents, which, as in the cases cited, would entitle them to a portion of the proceeds of their labor during the continuance of the life estate : and have indeed but a contingent interest in the remainder, as their mother has the power, by deed or by will, to dispose of all, or any part of the estate, to take effect at her death.

The case of Scott v. Gibbon, 5 Munford, 86, is a decision adverse to the view here taken. It is to be remarked that no authority is cited in support of the decision of the conrt, and it appears to have been made without sufficient consideration. This was afterwards followed, in the cases of Hughes v. Pledge, 1 Leigh, 443, and Roans v. Archer, 4 Id. 569 ; but these cases are decided upon the authority of the preceding case, without inquiry or examination.

We will next consider, how the interest of the husband, in this property, may be subjected to the payment of his debts.

Cook v. Kennerly & Smith.

As to his own life estate, it is obvious it is a pure legal estate, and may be sold under execution; and the question in respect to the life estate of the wife, reduced to his possession, has been also decisively settled by the decisions of this court —that it may be reached by execution at law.

In some of the cases previously cited, the property had been conveyed jointly to husband and wife; and in others to a trustee for the benefit of the wife alone. In Lamb v. Wragg and Stewart, 8 Porter, 73, the conveyance was to the husband as trustee, which trust he had resigned, and another had been appointed in his stead. The husband being in possession, it was held that his interest in the property could be sold under execution, but whether the fact, that the legal title was outstanding in another, interposed any obstacle to a sale at law of the husband's interest, does not appear to have been made in the argument of the cause, or considered by the court. But this point distinctly arose in judgment, in the case of Nelson, Carleton & Co. v. Banks, 7 Ala. 32. There the wife had a life estate in a slave, the legal title being in a trustee, and the husband having reduced the slave to his possession, it was held his interest could be sold by execution at law, against him. This decision was affirmed in The Bank v. Wilkins, 7 Ala. 592, and in O'Neil v. Teague, 8 Id. 345. In both of these cases, the legal title was in a trustee, but the possession being with the husband, was held subject to levy and sale for the payment of his debts; and in all, as in the present case, there was a remainder over, to the children of the husband and wife.

In this State, it has long been the settled doctrine, that similar equitable, chattel interests, could be sold by execution at law. In McGregor & Darling v. Hall, 3 S. & P. 397, this court held, that the possessory interest of a mortgagor, in slaves, could be sold by execution against him at law; and in Williams and Battle v. Jones, 2 Ala. 314, the present court held, the law thus settled, applicable to the maker of a deed of trust. This has been acted on from that day to the present time, and a multitude of such sales have been made. With what propriety can a distinction be made between such cases, and the present? Why should a distinction be made, between the case of a legal title outstand-

ing in a trustee, in a deed of trust, to secure the payment of debts, and an outstanding legal title in a trustee, to preserve a remainder; the use, and right to the possession, being guarantied to another for life? In both classes of cases, the right to use, and possess the property, is guarantied for a certain, specified period. It is not a mere right to the profits, arising from the employment of the thing conveyed, but it is a right to the use, and enjoyment of the thing itself. It is something, real, visible, tangible. Although it may be called a *use*, it is in truth, and in fact, the ownership of an estate in the property, for the life of the tenant. The mere naked title, outstanding in a trustee, to preserve the remainder, gives the trustee no power over the possessory interest of the tenant for life; and it appears to us, that in principle, there is not a shade of difference, between the interest of the husband in such cases as the present, and the possessory interest of a mortgagor, or maker of a deed of trust. When he is to all practical purposes the owner of the property during his life; when he may sell, and transfer his interest to another, why may not the same thing be done by the sheriff. The effect in both cases is precisely the same. In either case, the purchaser obtains, with the possession, the life estate of the tenant, and if the remainder is exposed to improper hazard, a court of equity will interpose, and protect it. In what respect does such an estate as this, differ from a lease-hold, real estate, or from the unexpired term of hire in a slave; yet no doubt can be entertained, that in either of these cases, the estate of the tenant could be sold by execution at law. It would be yielding the substance, for the shadow, to hold that there was any difference between them.

We have examined with great care, the decision made by the majority of the Court of Appeals in South Carolina, in the case of Ioor v. Hodges, 1 Spears' Eq. 593, where it was held, in a case similar to the present, that the interest of the husband in possession, could not be sold by execution at law. It is not necessary that we should examine the previous decisions of that court, to ascertain whether, as contended by the dissenting judge, the judgment there rendered, was in hostility with them. The decision there made, impliedly recognizes, that the interest of the husband could be reached

in equity, and in a question relating to the remedy, it cannot be expected we should abandon the decisions of our own court, long since made and acquiesced in, upon the authority of any tribunal, no matter how weighty it may be, even if we did not consider the decisions of this court abstractly correct.

An argument has been urged, founded upon the phraseology of the deed, by which the slaves are conveyed to the trustees, "in their actual possession." The argument is, that the possession is conveyed to the trustees, and that the beneficiaries are only entitled to the profits of the labor of the slaves. The deed was executed previous to the marriage, which may perhaps explain why the actual possession was conveyed to the trustees, as well as the legal title; it is however conveyed to them in trust, for the *use* of the husband and wife. The use of the slaves, implies the right of possession, which would alone render the use effectual or beneficial, by their employment as domestics, or in agricultural pursuits. It is the habit of the people of the southern states, to derive a revenue by the employment of their slaves in agriculture, and it is most unreasonable to suppose, it was intended these slaves should be hired out by the trustee, during the whole continuance of this marriage, and indeed until the death of the survivor. Admitting that the deed could have been so drawn, as to exclude both husband and wife from the possession, and confine them to a perception of the profits arising from the employment of the slaves, in this case they are entitled by the terms of the deed, to the *use* of the slaves, and that authorised them to have the possession. We think the trustees construed the deed correctly, by delivering the possession of the slaves, and that they could not rightfully have withheld it. If this were not the correct exposition of the deed, they certainly have the power under the deed, to permit the beneficiaries to have the possession of the slaves, if in their judgment it was the most appropriate mode of executing the *use*, under all the circumstances of the case. Having, in the exercise of their discretion, delivered the possession to the husband, the trust is executed, although the naked legal title may remain in them, for the purposes of the remainder, subject to the con-

tingency of the wife conveying the title to her husband, or some other person during her life.

This case is not within the second section of the statute of frauds. That applies to a possession, held under a loan, or where there is a reservation by way of condition, reversion or remainder, retained by another. In such cases, after a possession of three years without a registration of the deed, disclosing the nature of the estate, the absolute property is as to creditors and purchasers, considered to be with the possession; or in the language of the act, to be considered fraudulent. But here the possession is where, by the terms of the deed, it should be. It is not a loan, nor is there any reservation of an interest by the trustees. Whether the property in the hands of the trustees, without registration of the deed under which they held, would not be liable for the payment of *their* debts, is an entirely different question. That is the effect of the case of Craig v. Payne, 4 Bibb, 337, relied on by the counsel for the plaintiff in error, but it has no application here.

The marriage settlement being made in South Carolina, its legal effect must be ascertained by the law of that state. By the law of that state, such instruments, if not recorded in a mode pointed out, are declared to be void as against creditors. But an act of the same state declares, that such settlement, though not recorded, "shall be regarded as valid, between the parties themselves." Being valid between the parties to it in South Carolina, where it was made, that must be its effect here. The provision in relation to creditors can have no *extra* territorial efficacy, as a law, and was not intended to apply, except to debts created, or attempted to be enforced in South Carolina.

Other points were presented upon the record, and were argued here, but we abstain from their consideration, as we presume the questions decided will suffice upon another trial for the decision of the cause.

Our judgment is, that upon the facts stated on the record, the life estate of the husband, and of the wife, during the life of the former, in the slaves in controversy, are liable at law for the debts of the husband.

Let the judgment be reversed and the cause remanded.