## HALE et al. v. STONE.

1. Proof by a subscribing witness to a deed, "that the donor signed, sealed, and delivered the same, in his presence, or acknowledged he had done so at the time witness signed it, he could not tell which," is sufficient to admit the deed in evidence to the jury.

2. Declarations of a donor at the time of the delivery of slaves, that they were delivered to the trustee pursuant to the provisions of a deed, are admissible as part of the *res gestae*.

3. A deed by a father, conveying slaves to a trustee for the benefit of his daughter, is not required by the statute of frauds to be recorded, as against the creditors of the husband.

4. A conveyance of slaves to a trustee, in trust, that he would permit the daughter of the grantor, a married woman, "to have the use and benefit of the labor, and services of the said slaves, and all the proceeds thereof, during her life, and at her death, shall convey the said negroes to the lawful heirs of her body," does not give her a separate estate in the slaves.

Writ of Error to the Circuit Court of Coosa. Before the Hon. G. Goldthwaite.

The facts fully appear in the opinion of the court.

GRAHAM and PARSONS, for plaintiffs in error.
W. W. MORRIS, contra.

CHILTON, J.—The plaintiffs in error having an execu-

tion against one John M. Hamilton, caused it to be levied upon the three negro slaves in controversy, namely, Clara, Nice and Nelson. The defendant interposed a claim under the statute, and the trial of the right of property coming on, the plaintiffs proved that said slaves, at the time of the levy, were in the possession of Hamilton, the defendant in the execution, and had been since the year 1834, and having proved their value, rested.

The claimant then produced a deed from Warren Stone to him, bearing date 21st March, 1837, which was some seven years older than the plaintiffs' judgment, which deed purported to convey to the claimant, Barton W. Stone, the slaves in controversy, "in trust, nevertheless, that the said Barton W. Stone shall suffer and permit Mrs. Martha G. Hamilton, daughter of the grantor, to have the use and benefit of the labor and services of the said slaves, and all the proceeds thereof during her life, and at her death, shall convey the said negroes to the lawful heirs of her body, during her marriage with her present husband, John M. Hamilton—that is, to her two children now living, and to such other children as she may have during her coverture with said John M. Hamilton."

It appears from a certificate on the deed, that the grantor appeared before the clerk of the county court of Montgomery county on the day it bears date, and acknowledged "the foregoing instrument to be his own act and deed, for the purposes therein expressed and contained."

On the 15th December, 1840, it was lodged with the clerk of the county court of Coosa, and by him recorded on the above certificate.

The claimant proved by one of the subscribing witnesses to the deed, that "he, the witness, signed it in the presence of the other subscribing witness, and that the donor either signed, sealed and delivered the same in his presence, or acknowledged that he had done so at the time the witness signed it, he could not tell which." The plaintiff objected to the reading of the deed, together with the certificates upon the proof above stated, but his objection was overruled, and the same was read to the jury.

The claimant having further proved by one Pool, against the plaintiff's objection, that at or about the time the deed was executed, the witness was called on by Warren Stone, the grantor, who was then at the house of John M. Hamilton, to take notice, that he did then and there give the negroes mentioned in said deed to Barton W. Stone, for the use of his daughter, Martha G. Hamilton, during her life. That the negroes were called up in the yard at the time this declaration was made, and that John M. Hamilton was present, and made no objection." And having also shown that the slaves mentioned in the deed belonged to, and were in possession of the donor in the deed, previous to its execution or delivery, and that after its execution, said slaves were not under the control, nor in possession of said donor, the plaintiff asked the court to charge the jury, that if they believed the property levied on was the same mentioned in the deed of trust, they should find it subject to the plaintiff's execution, although the deed was honestly and fairly made. This charge was refused, and the court charged, that if the property levied on was the same conveyed by the deed, and there was no fraud in the conveyance, the property was not subject. The jury found for the claimant. The plaintiffs having saved the proper exceptions to the ruling of the court below, present for our reversion—1. The question as to the admissibility of the proof. 2. The legal effect of it, as creating an estate which may or may not be levied upon and sold for the debts of Mrs. Hamilton's husband, under an execution at law.

1. There can be no serious doubt, but that the proof made by the subscribing witness as to the execution of the deed, was sufficient to authorize it being read to the jury. Although a witness may have no recollection of seeing the party sign an instrument, yet if he recognizes his signature to it, and says he has no doubt he saw it executed, this has always been held sufficient to admit the writing to the jury.— Mangham v. Hubbard, 1 Mann. & Ryl. 7 ; 3 Phil. Ev. C. & H. Notes, 1304. It is not necessary that the witness should have seen the donor put his signature to the deed ; it is quite

sufficient if he acknowledged before the witness that he signed it, and called upon him to attest it.　1 Greenl. 637, n. 2 ; Ledyard v. Thompson, 11 M. & W. 41 ; Hall v. Luther, 13 Wend. Rep. 491.

The admission of the proof made by Pool was also proper. It merely went to show the actual delivery of the slaves, and the accompanying declaration of the donor, explained the object of the act, and being part of the *res gestae*, was properly allowed.　See Berry, use, &c. v. Hardman, 12 Ala. 604; Ib. 77.

No registration is necessary to render this deed valid.　No creditor or purchaser from the donor is here complaining, but the creditors of the husband of the party to whose use for life the slaves have been granted.　It is clear therefore that the statute of frauds, providing for the registration of voluntary conveyances, has no application whatever to the case. Swift v. Fitzhugh, 9 Porter. 39 ; O'Neal et al. v. Teague, 8 Ala. 349; Newman v. James & Newman, 12 Ib. 29; Clay's Dig. 254-5, § 2.

Neither are the plaintiffs aided by the last clause of the above statute.　For allowing them the benefit of every presumption which might legitimately have been drawn from the proof upon a demurrer to the evidence, the proof fails to show that John M. Hamilton had three years' possession of the slaves anterior to the execution of the deed, when an actual delivery is proven to have been made by Warren Stone, (the donor,) to his daughter, Mrs. Hamilton.　The plaintiff must make out his case.　The *onus* of proof is upon him, and if it be necessary in establishing his title, to show that his debtor has had three years continuous possession of the property he seeks to condemn, he must prove it.　That the property was in his possession *since the year* 1834, *and up to the* 21*st March*, '37, does not show that he had possession *on the* 21*st March*, 1834, and consequently does not prove that the property has been in possession of the debtor three years, so as to bring the case within the influence of the statute, subjecting the property to the debts of the possessor.

But the important question in this case, and the one upon which it must turn is, does the deed convey a separate es-

tate to Mrs. Hamilton in the slaves, which cannot be reached by the husband's creditors? Many cases of a kindred character have been decided by this court, and their frequent recurrence renders it highly desirable that the law applicable to them should be plainly and explicitly laid down, so as if possible, to check this fruitful source of litigation. A short review of our own decisions upon the question will better enable us to ascertain the precise ground we occupy with respect to it.

In Harkins et al. v. Coalter, 2 Porter, 463, it was held, that a deed of gift of certain slaves by a father to his daughter, and the heirs of her body, if she should have any by her then husband, to have, &c., to the only proper use and behoof of said daughter and her husband, and their issue, and for their joint use and support during the lives of said husband and wife, and in default of issue, then to remain in the joint use and possession of the said daughter and her husband for the support of themselves and none others, did not create a separate estate in the wife, but an absolute estate in the husband, and subject to his debts.

In Lamb, Trustee, v. Wragg & Stewart, 8 Porter, 73, it was held, that a deed of gift of slaves made by a father to his son-in-law, in trust for his wife (the daughter,) vested in the son-in-law the title to the slaves, and subjected them to his debts. It was also further held, that the intervention of a trustee made no difference, where there were no words in the instrument excluding the marital rights of the husband. This case was followed by the case of Dunn and wife v. The Bank of Mobile, 2 Ala. 152, in which it was held, that a deed of gift, conveying to the wife and her children, then *in esse*, and thereafter to be born, certain slaves, did not convey to the wife a separate estate, but her interest in the property vested in her husband, if in his possession, and was subject to be sold under execution at law against him. In Inge et al. v. Forrester, 6 Ala, 418, the testator directed by will, that certain persons should have the control of all the following property, &c., " to be used and managed at their discretion, for the mutual use, benefit and interest of my daughter, Rebecca Inge, and her surviving children ; and as

they come of age or marry, that the slaves be equally divided between her and them," naming the slaves. It was held, that no separate estate was vested in Mrs. Inge; that to create such estate, the intention must clearly appear upon the face of the instrument.

Next follows the case of the Bank v. Wilkins, 7 Ala. 589. This was the case of a post-nuptial settlement, made by the husband upon a trustee, of property acquired by the marriage, in trust for the joint use of himself and wife, for their lives—remainder to the survivor, and remainder in fee to the issue of the marriage—held, the husband had, under the deed an estate for life, subject to sale under execution at law ; the deed providing that he shall have the possession, and be entitled to the rents and profits. As to the title being vested in the trustee, see Carlton & Co. v. Banks, 7 Ala. 32, where the life estate of the wife in property, the legal title to which was vested in a trustee, was held subject at law to the husband's debts. [GOLDTHWAITE, J., dissenting.]

To the same effect is the case of O'Neal et al. v. Teague et al. 8 Ala. 345; where the father, shortly after the marriage of his daughter, gave by deed the legal estate in certain slaves to a trustee, for the benefit of his daughter and her husband during coverture, and should the daughter die without issue, the slaves to revert to the donor.

In Fellows, Wardsworth & Co. v. Tann et al. 9 Ala. 999, it was held, that the husband's creditors could not proceed under execution at law to condemn slaves given to his wife while *sole*, by her father, " to her during her natural life, and to the heirs of her body, with this condition, namely, that the slave shall be under the entire control and management of the daughter, in the most profitable and useful way, for the use and support of her and her heirs during their natural life, and after her death, the property to be equally divided among her heirs ;" there being several children of the daughter living at the time of the levy, and the daughter having taken possession of the property shortly after the gift, which property had been regarded for more than twenty years as the separate estate of the daughter and her children.

The case of Anderson v. Hooks, (improperly reported.

*Brooks*,) 11 Ala. 953, was upon a conveyance by Clanton & Hooks to the latter, as trustee, for the *sole and separate use, benefit and behoof of Mrs. Harris and her children."* This, it was held, according to all the authorities, vested a separate estate in Mrs. H., which the creditors of her husband could not reach.

So also, in a case before this, of Spear v. Walkley, 10 Ala. 328, where it was held that a bequest to a husband, of slaves, as trustee, to be held and worked by him, for the use of his wife and children, but subject in no way to his debts, contracts or judgments, and at his death to be equally divided among his children then living, did not create a legal estate in the husband, subject to be sold under execution at law, as the intention of the testator would be defeated by a seizure and sale; the object being the creation of a personal trust, for the special purpose of the slaves being worked *by the husband*, for the use of his wife and children.

In Jasper & Maclin v. Howard, Trustee, 12 Ala. 652, it was held, the words in a will, "I lend to my daughter, C. D., wife of G. D. certain slaves, (naming them,) to enable her to support, school and clothe her children during her natural life, and after her death to be equally divided between her children," &c. did not vest in G. D., the husband, such estate as could be sold under execution at law.

In Newman v. James & Newman, 12 Ala. 29, it was held, that a deed to a married woman, by which slaves were conveyed "to her and her heirs, to have and to hold the same to and for her use, benefit and right, and of the heirs aforesaid, without let, hindrance, or molestation whatever," is a conveyance to the sole and separate use of the wife.

The case of Cook v. Kennerly & Smith, 12 Ala. 42, decides that an ante-nuptial contract by *feme* conveying certain property to trustees, to use of herself and intended husband for life, remainder over, &c. does not create separate estate in the wife.

From these several decisions of our own court, and the reasoning and authorities upon which they are based, we extract the following principles, which must guide us in our decisions upon similar cases:

102

1. That while the owner of property may so convey, or bequeath it, as to create a separate estate in a *feme covert*, yet such claim on the part of a married woman being against common right, it is necessary that the instrument under which the claim is made must clearly speak the *intention* of the donor to exclude the husband, otherwise he shall take the property.

2. That in the absence of such declared intention to exclude the husband, the intervention of a trustee will not have the effect of vesting in the wife a separate use. But if the wife, by the terms of the gift, be entitled to the *usufruct* in the property, and the same comes to the possession of the husband, the wife's interest, whether for years, for life, or in fee, may be sold under execution at law against him.

3. In cases where the instrument limiting the estate contains directions in respect to its enjoyment, use or management, wholly incompatible with any dominion of the husband over it, his creditors cannot reach it under executions at law.

4. Whenever the estate of the wife is equitable merely, and the husband has not reduced it into his possession, but must resort to a court of equity to recover it, (in which case a suitable provision would be made for the maintenance of the wife,) the creditors of the husband cannot proceed at law to obtain satisfaction out of such property.

5. Where the wife is to participate in the benefits of the gift, in common with persons other than the husband, who are also the objects of the donor's bounty, for example, her children, although the husband may have the actual possession of the property, the wife's interest cannot be made subject *at law*, to the payment of his debts, if a seizure and sale of the property would defeat the intention of the donor in respect to the other beneficiaries, or destroy the trust.

The cases cited from our own reports, and the principles above deduced from them, very satisfactorily show, that the deed in the case before us does not create a separate estate in Mrs. Hamilton—she is to have "the use and benefit of the labor and services of said slaves, and all the proceeds thereof during her life." The language employed clearly

Hale et al. v. Stone.

shows, that she was to have the possession of the slaves— "the use of their services and labor." The case of Cook v. Kennerly & Smith, is conclusive to show, that the mere naked title outstanding in the trustee, to preserve the remainder, gives him no power over the possessory interest in the slaves, and that such interest vests in the donee for life, who is entitled to the use. The trustee has nothing further to do with them, than to convey, at the appointed time, the legal title to those entitled in remainder. The husband is found in the actual possession of them, which he has had for many years, and in our judgment, the plaintiffs have a clear right to levy upon and sell the interest of the wife which vested in him. The terms, "for her use and benefit," not followed by other expresssions, showing an intention to exclude the husband, does not create a separate estate. Hill on Trustees, 420-1, n. c.; Clancey on Rights of Married Women, 267, 268.

In Cook v. Kennerly & Smith, *supra*, the slaves were conveyed to trustees, in their actual possession, to the use of the grantee and her intended husband, *&c.* It was held that this deed conveyed no separate estate to the wife, and that the life estate was liable at law, to the husband's debts, he having possession of the slaves.

The English Reports abound with authority to show the words used in this deed are insufficient to create a separate estate in the wife. In Tyler v. Lake, 4 Sim. 144; s. c. 2 Rus. & Mylne, 183, (6 Cond. Ch. Rep. 74, 450,) the trustees were directed to pay certain shares of two *femes covert* "into their own proper and respective hands, to and for their own proper use and benefit." The vice chancellor held, this did not create a separate estate in them; and upon an appeal his decision was confirmed by Lord Chancellor Brougham. So in Kensigton v. Dolland, 2 Mylne & Keene, 184, it was held by Sir John Leach, master of the rolls, that a gift to a wife, "for her own use and benefit," did not create a separate estate. True, in this case, the decision was influenced to some extent by the fact that the donor, by a previous lim-

itation in the same deed, of a life estate upon herself, had used technical language so as to vest a separate interest. The same doctrine is however affirmed by numerous other cases. Wills v. Sayers, 4 Madd. Rep. 409; Roberts v. Spicer, 5 Madd. Rep. 491; see 2 Story's Eq. 751, § 1383, and authorities cited.

Our conclusion is, that the judgment must be reversed and the cause remanded.