# Stevens v. Hertzler.

*Bill in Equity for Reformation of Written Contract and for Injunction of Execution at Law.*

1. *Bill for reformation of contract; equity thereof; construction of contract.*—An instrument acknowledging the receipt of property "to be paid for as per the terms" of an option, by which the maker of the instrument was allowed three months within which to purchase the property at a fixed price, and containing an alternative clause for the return of the property within such time, thereby absolving the maker from all liability, imports an absolute promise to pay for the same if not so returned, but if reformed so as to read that the property is "held as per the terms" of the option, it would amount to an option to purchase within such time, to be manifested by some affirmative

'[Stevens v. Hertzler.]

act other than the mere failure to return the property; and a bill filed to so reform such contract is not open to the objection that it appears that if the corrections sought were made, the legal tenor and effect of the writing would not be either varied or changed.

2. *Same; same.*—A bill in chancery to have reformed a written contract upon which a judgment at law has been rendered, so that as reformed, it will not support such judgment, and asking for a perpetual injunction of the judgment, which bases complainant's right to relief upon the fact that the contract upon which the judgment was rendered had the form as written, in consequence of a mutual mistake of the parties, and the agreement really entered into was materially different from that evidenced by the writing, contains equity; such fact constituting a purely equitable defense which the complainant could not have availed himself of in a suit at law, and making it against conscience to execute the judgment. (Distinguished from the case of *Moore v. Faggard,* 51 Ala. 525.)

3. *Equitable relief; when defendant at law not barred therefrom; laches.*—A defendant in a suit at law, having only a purely equitable defense to the cause of action stated in the complaint, is not barred of his equity by the mere fact that he defers filing his bill until judgment has been entered against him at law, and such delay asking for relief in a court of equity does not constitute *laches.*

4. *Same; same; estoppel.*—Where a defendant in a suit at law has only a purely equitable defense which could not be made available to him in a court of law, he is not estopped from seeking equitable relief against such judgment by the mere fact that he did not invoke the powers of equity thereto until after the judgment at law was rendered.

5. *Same; same; judgment at law does not constitute estoppel against defendant.*—A judgment recovered upon a written contract in a suit at law does not estop the judgment defendant from afterwards say that the contract had the form, as written, only in consequence of a mutual mistake of the parties, and the agreement between them was materially different from that evidenced by the writing, and does not preclude him from invoking equity to reform the written contract, so that it shall set forth the terms upon which the parties really agreed, which terms would not authorize the judgment rendered.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed on May 11, 1896, by the appellant, James R. Stevens, against the appellee, John Hertzler, Jr., and as amended everred the following facts: The defendant and others, being the owners of stock in the Hagey Hospital Association of Texas, executed to the complainant, on January 8, 1894, a written contract, in which they recited that they were desirous

[Stevens v. Hertzler.]

of selling their respective and several holdings of said stock, and "That for and in consideration of the sum of ten dollars to us in hand paid by James R. Stevens, of the county and State aforesaid, and for divers other and valuable considerations, we do hereby covenant and agree with, and obligate ourselves to the said James R. Stevens, his heirs and assigns, that we will at any time within three months from the date of this agreement, sell, transfer and deliver to the said James R. Stevens, our respective shares of the stock in the said Hagey Hospital Association of Texas, a corporation duly organized and incorporated under the laws of the State of Texas, as aforesaid, at and for the agreed sum of twenty-five and 92-100 dollars per share. In the event the said James R. Stevens should not avail himself of the option within the time specified, then these presents are to be void, and all parties hereto are to be discharged from any liability on account thereof." At the time of the giving of this opinion, the complainant was a citizen of Huntsville, Alabama, and one of the parties to the contract, in addition to the defendant, was a son of the complainant. The cause of the execution of the contract was that the complainant expected to make a trip to Texas, and at the solicitation of the parties to said contract, including the defendant, he agreed to make an effort to sell this stock for said parties during his stay in Texas, and said contract was made for the purpose of enabling him to make a valid sale thereof in the event he found a purchaser. After the execution of this contract of option, it was suggested by the parties thereto that they should turn over their respective certificates of stock to the complainant, in order that he might carry such certificates with him, and in the event he was able to effect a sale of the stock under the option, he could make a delivery of the certificates and close the sale at once. It was averred that, "In pursuance with the said suggestion made by the parties who signed said option, your orator received from them their stock in said association, and the understanding and agreement was, at the time that he so received said stock, that he would hold it under and in pursuance of the terms of the said option, and that he would take it with him to the State of Texas, and if he was enabled to make sale of the stock as was proposed, he would account to them for the proceeds of the

sale of it; and if he failed to do so, that he would return the stock. And to carry out this intention and understanding in reference to the delivery of the stock, and as evidence of the receipt of it by the complainant, he gave to the defendant a receipt for his stock when so delivered to him, which was in the words and figures as follows: 'Huntsville, Ala., Jan., 16th, 1894. Received of John Hertzler, Jr., forty-nine (49) shares of the capital stock of the Hagey Hospital Association of Texas, to be paid for as per terms of a contract duly signed by said Hertzler, Jr., dated January 8th, 1894, or the said forty-nine shares of stock to be returned by me to said Hertzler, within the time specified in said contract. [Signed.] J. R. Stevens. Witness, Erskine Mastin.' And he gave to each of said other parties a receipt in substantially the same form.'' The complainant drew and prepared this receipt himself, without the aid or assistance of a lawyer, or of one skilled or experienced in the drafting of legal instruments, and it was given to the parties, respectively, at the time of their delivery to him of the certificates of stock, with the full understanding and agreement between the parties that it was received by the complainant, not with the purpose or intention of his purchasing the stock, but wholly with a view of enabling him to make a sale and delivery of it in the event he could do so, on the proposed trip; and he held the stock under and in pursuance of the terms of said option.

The complainant went to Texas, and failed in his efforts to sell the stock, and after the expiration of the time specified in the contract of option and the receipt, he turned over to the parties signing said option, their respective holdings of stock, except to the defendant. After the expiration of the time specified in the option and receipt for the purchase of said stock, the defendant made a demand upon the complainant for the purchase price of his stock as specified in the option. This demand was refused, the complainant tendering to the defendant his stock, which he declined to receive.

Thereafter, on May 22, 1894, the defendant instituted an action at law in the circuit court of Madison county against the complainant on the two instruments above referred to, bearing date January 8, 1894, and January 16, 1894, respectivelly, for the recovery of the purchase

price of said stock as specified in the option. To this action, the complainant made defense that he did not owe the defendant anything on account of said stock; that he did not undertake to purchase, and did not purchase, said stock as was claimed in the complaint.

On the trial of this cause, the court would allow no evidence as to what the real and true agreement between the complainant and defendant was in regard to the stock, outside of what was expressed in the two written instruments; and the court held that the effect of these two instruments was the sale of the stock by defendant to complainant, conditioned upon the return of the stock within the time specified to be vacated, and as the stock was not returned within the time specified, the complainant was liable for the purchase price of it as specified in the option; and judgment was rendered against the complainant for the amount claimed. From this judgment the complainant appealed to the Supreme Court, where the judgment was affirmed; and after the affirmance an execution was issued thereon, and at the time of the filing of the bill was in the hands of the sheriff to be levied upon the property of the complainant for the satisfaction of said judgment. It was then averred by the complainant that the defense of the suit at law was conducted by attorneys regularly employed for that purpose, and that what he did in defense of said suit was because he believed he could successfully defend the action, and it was done with the view of protecting himself from the unjust claim asserted by the defendant. The bill then avers: "Your orator alleges that in preparing and drawing up the said instrument of date January 16th, 1894, he used inapt language to convey the meaning, intention, understanding and agreement of the parties to it, and that said instrument as drawn and signed by your orator did not state correctly what was the true understanding and agreement of the parties and their intention in regard to the instrument. Instead of the word 'paid' being used in the said instrument where it appears, the word 'held' should have been inserted, and it was a mistake of your orator in thus inserting in said instrument the word 'paid' for the word 'held', or a word of like significance and meaning; and by striking out of said instrument the following words at the conclusion thereof: 'or the said forty-nine shares of stock to

[Stevens v. Hertzler.]

be returned by me to said Hertzler, within the time specified in said contract.'

"Your orator avers that the express understanding and agreement between him and the defendant, and the meaning and intention of your orator in preparing said receipt and in signing it, was only to give to the defendant evidence of the fact that he had turned over to your orator the certificates of stock held and owned by the defendant in said Association, said certificates to be taken and received by your orator and to be held by him under the terms of the said option, and the certificates to be returned to the defendant in the event your orator was unable to make disposition or sale of said stock, as was proposed on his contemplated visit to the State of Texas. And it was a mistake of your orator in preparing the said receipts for the stock to have used the language employed in said receipts as given. The construction of said receipt as given is entirely at variance with what was the intention of the complainant in preparing the instrument, and what was the agreement and understanding of the parties to it before and at the time that it was signed."

The prayer of the bill was that the instrument bearing date January 16, 1894, be surrendered to the court and the same be cancelled, and that the defendant be enjoined from further proceeding to enforce the collection of the judgment recovered by him. To the bill, as amended, the defendant demurred upon the following grounds : "1. The averments of the bill show that complainant is barred by his own *laches* of the relief therein prayed, because when sued on said contract as the same was written, he failed to set up or claim, in any proper manner, that the contract was other than said writings showed, but allowed said suit to proceed to judgment against him, and unsuccessfully sought a reversal of said judgment in the Supreme Court. 2. The averments of said bill show that complainant has estopped himself to seek relief therein prayed by putting defendant to the expense and trouble of prosecuting his action at law on said contract and reducing the same to judgment, before he, complainant, sought the correction of the alleged mistake in said contract as the same was written by the complainant himself. 3. The bill does not show any reason or excuse why the complainant permitted a judg-

[Stevens v. Hertzler.]

ment to go against him at law before seeking relief prayed for. 4. The averments of the bill show that complainant should have sought the relief therein prayed before the judgment at law was permitted to be entered in favor of defendant. 5. The bill shows that the rights of the defendant against the complainant under the contract in reference to said stock have been merged in the judgment rendered in favor of defendant against complainant, and the bill avers no facts constituting any ground for opening, impeaching, setting aside, or restraining the execution of said judgment. 6. The averments of the bill show that the judgment and understanding between complainant and defendant in reference to said stock, which is set up as the basis of the relief prayed, is repugnant to and inconsistent with the option contract of January 8, 1894, which is not impeached by any averment of fact contained in said bill, and that the effort of the complainant is to obliterate and ignore the contract between the parties as evidenced by the writing. 7. The bill shows that the option contract of January 8, 1894, truly expresses the agreement of the parties, and the correction sought to be made in the wording of the receipt or contract of date January 16, 1894, would not materially alter or vary the legal effect of either of said writings. 8. The averments of the bill do not clearly, distinctly and unequivocally show in what respect it was mutually understood between the parties, that the receipt or writing sought to be corrected should be different from what is expressed therein. 9. The bill shows that when the complainant was sued at law in May, 1894, on the contract now sought to be corrected, then having full knowledge of the facts, he had his election to stand on the contract as the same was written, or seek the correction thereof, and that he elected to defend the claim then made against him without denying that the writings truly expressed the contract between the parties, thereby estopping himself to impeach said writings after judgment was rendered thereon against him. 10. The bill does not show that the defendant was in any way at fault in the wording of the instrument now sought to be corrected, which was written by the complainant. 11. If the words sought by the bill to be interpolated into the instrument of January 16, 1894, were so interpolated,

[Stevens v. Hertzler.]

its legal effect would not be altered in any material respect, and the bill does not show that the judgment at law against the complainant would have been improper if such interpolation had been made before the judgment was rendered. 12. The substitution in the contract of the word 'held' for the word 'paid,' and the striking out of the words 'for the said forty-nine shares of stock to be returned by me to said Hertzler within the time specified in said contract,' would have the effect of making a new contract for the parties, if of any effect at all, instead of merely correcting a mutual mistake in a contract already made. 13. If the words sought by the last amendment to the bill to be stricken out of the instrument of January 16, 1894, were stricken out, the legal effect of said instrument would not be altered in any material respect. and the bill as amended does not show that the judgment at law against the complainant would have been improper had such words been stricken out before the judgment was rendered. 14. The bill shows that the option contract of January 8, 1894, truly expresses the agreement of the parties, and the corrections sought to be made by the bill as amended in the wording of the instrument of January 16, 1894, would not materially alter or vary the legal effect of either of said writings." There was also a motion made by the defendant to dismiss the bill for. want of equity.

Upon the submission of the. cause upon the demurrer. and the motion to dismiss, the court sustained each of them, and decreed that the bill be dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

HUMES, SHEFFEY & SPEAKE and R. E. SPRAGGINS, for appellant.—1. The appellant was not guilty of laches in not seeking a correction of the written contract and enjoining the prosecution of the suit or judgment so rendered.—Dexter v. Ohlander, 97 Ala. 476; s. c. 95 Ala. 467.; Hale v. Stone, 14 Ala. 803; 1 Story's Eq., §§ 153–155.

2. After a contract has been passed upon by a court of law, a party to the suit may file a bill in chancery to have such contract reformed for a mistake, without having laches imputed to him. "If the matter relied on

by the complainant could not have been received as a defense in the trial at law, because it fell within the exclusive jurisdiction of chancery, or by reason of the forms of legal procedure, equity will relieve, notwithstanding there may have been an ineffectual attempt to defend at law."—1 Black on Judg., § 388 ; *Harding v. Hawkins*, 33 Amer. St. Rep. 347 ; *King v. Baldwin*, 8 Amer. Dec. 415 ; *Calloway v. McElroy*, 3 Ala. 406.

3. If there is a doubt whether a defense is available at law, and there is undoubted jurisdiction in equity, and at law the defendant omits to make his defense, or if he makes it and it is overruled on the ground that it can not be considered at law, a court of equity may afford relief, notwithstanding a trial at law.—*King v. Baldwin*, 8 Am. Dec. 415, s. c. 17 Johns. 384 ; 1 Black on Judgm., § 389, p. 483 ; *Howell v. Motes*, 54 Ala. 1 ; *Nelson v. Dunn*, 15 Ala. 502. "An unsuccessful attempt to assert in a court of law a defense purely equitable is not an estoppel in a court of equity."—*Nelson v. Dunn*, 15 Ala. 502.

4. A court of equity has jurisdiction to grant relief against mistakes.—15 Amer. & Eng. Encyc. of Law, 626, 638, 644. Where a mutual mistake in the making of a contract is shown, a court of equity has jurisdiction to afford relief.—*Wilson v. Ott*, 51 Amer. Rep. 767 ; *Hunt v. Rousmanier*, 8 Wheat. 174. The general rule is, that mistakes of law can not be relieved in equity, and while the policy and correctness of the rule are conceded, there is frequently found some difficulty in its application. Where the instrument does not express the agreement of the parties, from ignorance or want of skill on the part of the draughtsman, it is competent for equity to correct the mistake.—*Hunt v. Rousmanier*, 8 Wheat. 174 ; *Larkins v. Biddle*, 21 Ala. 252 ; *Clopton v. Martin*, 11 Ala. 187 ; *Stone v. Hale*, 17 Ala. 557.

R. W. WALKER and TANCRED BETTS, *contra.*—1. The bill was filed too late. Two years before the bill was filed, the appellant was sued on the contract now sought to be reformed. If the real contract was other than the writings expressed it, Stevens knew this as well then as he does now. He elected to stand on the contract as written, and on this basis litigated the matter with Hertzler in the circuit court and in the

Supreme Court. If Stevens' reliance was upon a contract which the writing did not truly express, the time for him to define his position was when he was notified by the suit that Hertzler insisted on the contract as written. His position in that ligation involved the admission that the writings expressed the contract. It is too late now to withdraw that admission.—*Moore v. Faggard,* 51 Ala. 526 ; *Garrett v. Lynch,* 45 Ala. 211 ; *McCollum v. Prewitt,* 37 Ala. 573 ; *Powell v. Stewart,* 17 Ala. 725 ; *Hill v. McNeill,* 8 Porter 432 ; *Allman v. Owen,* 31 Ala. 169 ; 12 Am. & Eng. Encyc. of Law, 603 ; 15 Am. & Eng. Encyc. of Law 666 ; 2 Pomeroy Eq., § 816 ; 95 U. S. 159 ; 120 U. S. 387 ; 191 U. S. 568 ; 159 U. S. 291 ; 73 Am. Dec. 250.

2. By litigating with Hertzler at law for two years on the basis of an admission that the writings expressed the true contract between them, Stevens estopped himself to claim that the real contract was other than what is expressed in the writings. Stephens elected to stand by the contract as he himself wrote it. He induced Hertzler to incur expense and trouble in reducing that contract to judgment. It may readily be imagined that if the stock had gone above the contract price, this bill for a reformation would never have been filed, for it would have profitted Stevens for him to continue to stand on the contract as written, though judgment was rendered thereon against him. The rule of estoppel is intended to prevent this kind of speculation.—*Howle v. North Birmingham Land Co.,* 95 Ala. 389 ; *Orendorff v. Tallman,* 90 Ala. 445 ; *Foster v. Gressett,* 29 Ala. 293 ; *Turner v. Kelly,* 70 Ala. 85 ; *Berry, Demoville & Co. v. Sowell,* 72 Ala. 14.

3. The judgment at law would be proper, and should not be enjoined, if the alterations in the writings sought by the bill were made. If the writing of Jan. 16, 1894, be changed so as to be a receipt for the stock, with the stipulation that it was "to be held as per terms of" the contract of Jan. 8, 1894, still the papers would show that Stevens took the stock as purchaser ; and in his suit on the papers as altered, the judgment would inevitably be the identical judgment now sought to be enjoined.

4. The bill seeks to set up a state of facts utterly inconsistent with the terms of Jan. 8, 1894, which is not

[Stevens v. Hertzler.]

impeached by any averment of the bill. In other words, the real effort of the bill is to show that the relations between the parties were wholly different from the re- lations fixed by an unimpeached written agreement. The relief sought can not be reconciled with a recognition of that contract. That contract shows that Stevens was to get the stock as purchaser. The object of the bill is to nullify that unimpeached contract by substituting in its stead a parol understanding that Stevens was to take the stock as Hertzler's agent to sell. To grant the relief prayed for would necessarily involve the obliteration of a contract set forth on the face of the bill.—*Clark v. Hart*, 57 Ala. 390 ; *Campbell v. Hatchett*, 55 Ala. 548 ; *Turner v. Kelly*, 70 Ala. 85 ; *Berry, Demoville & Co. v. Sowell*, 72 Ala. 14.

McCLELLAN, J.—We are not of opinion that the change in the language of the paper dated January 16, 1894, for which the bill prays by way of reforming the writings now evidencing the contract between the par- ties, would be without effect upon the legal construc- tion and meaning of the writings. The two papers, of January 8th and 16th, respectively, as acted upon the former by the latter, import a promise by Stevens to pay Hertzler $25.92 per share for forty-nine shares of certain stock, belonging to Hertzler, but then in the possession of Stevens, unless the same should be returned to Hertzler within three months from the date of the first instrument, as was held when this cause was here on appeal from the circuit court.—*Stevens v. Hertzler*, 109 Ala. 423. But if the paper of January 16th should be reformed as prayed in the bill, it would, we think, be nothing more than a receipt by Stevens for the stock from Hertzler, accompanied by or containing a recital that the former was to hold it subject to the option agreement of January 8th, intended, not to evidence a contract of sale or return, but merely to exclude the idea that the deliv- ery to Stevens should be either an election by him to purchase under the option or a rescission of the contract giving him the option to purchase within three months. So that, if the writings be reformed as proposed by the bill, Stevens would not have become liable for the agreed price of the stock, unless he had within the time limited affirmatively elected to avail himself of the option to buy,

and evidenced such election by some act or means other than the mere failure to return the certificate of shares to Hertzler. The bill was, therefore, not open to the objection, that it showed by its averments that if the correction sought were made, the legal tenor and effect of the writing would not thereby be varied or changed, but would in its new as in its original form authorize and support the judgment sought to be enjoined.

The general rule by which courts of equity are guided when their powers are invoked to the injunction of judgments rendered by courts of law, is thus stated by Chief Justice MARSHALL : "Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault on the part of himself or his agents, will justify an application to a court of chancery."—*Marine Insurance Co. v. Hodgson*, 7 Cranch, 332. The same general doctrine is condensed in statement by Justice CURTIS in *Hendrickson v. Hinckley*, 17 How. 443, thus : "A court of equity does not interfere with a judgment at law unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented of availing himself of by fraud or accident, unmixed with negligence of himself or his agents." And this exposition of the principle is universally accepted by courts and text-writers.—2 Story Eq. Jur., § 887 ; 1 High on Inj., § 114 ; 1 Beach on Inj., § 615.

The cases in which equity will interfere by injunction, and restrain an action at law, either before or after judgment, are reducible, says Mr. Pomeroy, to three general classes : "1. Where the controversy, in addition to its legal aspect, involves some equitable estate, right, or interest which is exclusively cognizable by a court of equity, so that a complete determination of the issues cannot be made by a court of law, it is well settled that equity not only may, but must, interfere at the suit of

the party in whom the equitable estate or right is vested, and restrain the action at law and decide the whole controversy. This is so when the defendant at law has a purely equitable defense which the court of law will not recognize or enforce, *and especially when he is entitled to some affirmative equitable relief which will clothe him with a legal right or title, and thus defeat the legal action* brought against him." [The italicization is ours]. 2. Where courts of law and of equity have concurrent jurisdiction to grant their respective and distinctive remedies, but the remedy afforded by the law court is not adequate to to the accomplishment of full justice between the parties; and 3. Where the legal judgment was obtained or entered through fraud, mistake, or accident or where the defendant in the action, having a valid legal defense on the merits, was prevented to maintain it by fraud, mistake or accident, and there was no *laches*, negligence, or other fault on his part or on the part of his agents, contributing to his failure to make defense.—3 Pom. Eq. Jur., §§ 1362-64.

It is entirely obvious that the present case—for the reformation of a written contract upon which the judgment, at law was rendered, so that as reformed it would not support such judgment, and for the perpetual injunction of the judgment—belongs not to the second or third class just defined, but to the first, the fact relied on being one "which proves it to be against conscience to execute the judgment," and of which complainant could not avail himself at law, and which, if established, would entitle him to affirmative equitable relief of a nature to clothe him with a legal right destructive of respondent's cause of action both in equity and at law.

There are a very great number of adjudications to the effect that a defendant at law, having a defense there available in bar of the legal action but failing to present it, must, on coming into equity for an injunction of the judgment, both allege and prove that his failure to defend was due purely to accident, mistake or fraud wholly unmixed with *laches* on his part; but neither these authorities, nor the principle upon which they proceed can have any application to a case of the first class as defined by Mr. Pomeroy, such as this one is, where the very ground and reason for resorting to equity is that the defense relied upon it not cognizable at law at all,

and could not possibly be or have been made there; a theory which is in itself utterly exclusive of the notion of any negligence or fault on the part of the complainant in failing to make the defense in the legal forum. The authorities just adverted to, having reference to cases of the third class, and no pertinency to those of the first, were, it would seem, applied to the present case in the court below, to the conclusion that the bill showed the complainant was guilty of *laches* which barred his right to the relief he sought. This conclusion is specifically based on the fact that complainant waited until after judgment passed against him at law before filing this bill, when, as it is insisted, he should have sought the reformation of the contract sued upon while the action was in progress and before judgment. The authorities relied upon to support this view, fail so to do, in our opinion: they all relate, certainly in respect of what is *decided* in them, to cases of the third classification *supra*, and not at all to cases like the present one. Chief among them is *Moore v. Faggard et al.*, 51 Ala. 525. We have no doubt of the entire soundness of that case, as well for all that was *said* as for all that was *decided* in it, barring a misleading tendency of one sentence: indeed it contains nothing of *dictum*, but the opinion goes solely upon questions presented by the record and necessary to be determined. It holds in substance and effect, that where a defendant at law has an equitable defense to the cause of action, which rests in part upon a state of facts which cannot be shown in that forum and in part upon a fact which is of legal cognizance and is irrelevant in the issues tendered by the complaint in the action at law, and properly determinable in that action, such fact being a bar to the action if pleaded therein and proved, such defendant, if he would avail himself of his equity, must either invoke the aid of chancery before that constituent of his right which rests upon the fact involved in the action at law is destroyed by a judgment determining the non-existence of the fact, or, failing that, he must show that he was prevented by fraud, accident or the act of his adversary, without fault on his part, to plead and prove the fact in the forum of law. The suit in that case was instituted by Faggard and others, *suing as partners*, against Moore on a contract for work and labor done. Moore claimed that

[Stevens v. Hertzler.]

he had demands against Faggard and the others individually, that they *were not partners*, but joint owners of the claim sued on, and that the course of dealing between them, collectively and individually on the one hand and himself on the other, had been such that the debts they individually owed him constituted equitable sets-off against their *joint* demand against him. His equity, therefore, rested upon two distinct facts : first, that plaintiffs were not partners but joint owners ; and, second, the course of dealings alleged between them. If plaintiffs were partners, as they alleged in the action at law, he had no equity. That was an issuable fact in that action, and disproof of it would have been a bar. But he did not make this issue, or, indeed, any issue, but stood supinely by and judgment went against him by default. This judgment was conclusive that plaintiffs were partners, and hence conclusive that Moore's demands against them individually could not be set off, any more in equity than at law, against the debt he owed the partnership. Moore thus having failed to invoke the aid of chancery while both constituents of his equity were at large, and having through his own negligence allowed one of the facts on which it rested to be properly and regularly adjudged against him in the action at law, he had no standing in equity, not only because his bill showed the judgment at law was not due to any fraud or accident, or the act of his adversary preventive of his making defense unmixed with his own fault, but also for that the judgment at law was finally determinative that plaintiffs were partners against whose claim his demands against them individually could not be set off in any forum, legal or equitable. One sentence in the opinion in that case is misleading. It is this : "He ought not to let the suit at law proceed to judgment, when he knows he has an equitable defense against it." Now, he in fact had, according to the averments of his bill, a perfect *legal* defense against that suit, but no shadow of an equitable defense. The suit being by an alleged partnership, a plea of no partnership, supported by proof, would have defeated the action. But neither at law nor in equity could the defense, by way of equitable set-off alleged in the bill, be made against Faggard and the others as partners, so that to the action as brought Moore had no

37

equitable defense whatever, and no defense at all except the legal one of *nul tiel* partnership. And it is clear from the whole opinion that if the defense had been of purely equitable cognizance, if the suit had been prosecuted by Faggard and his associates as *joint owners* of the claim and not as *partners*, no fact would or could have been determined in it destructive of complainant's equity to set off their several debts due to him, and his bill would have been sustained on demurrer. Certainly it should have been.—*French v. Garner et al.*, 7 Port. 549.

We have considered this case somewhat at length because upon it reliance is chiefly had to support the decree below. It really belongs to the third category stated above, and rests upon principles having no application to cases of the class to which the one we have in hand belongs.

Another line of cases relied on is illustrated by that of *McCollum v. Prewitt*, 37 Ala. 573. These hold that a defendant, after judgment, can not invoke the injunctive power of chancery, when his defense is legal and failed of being made in the law court, because the evidence to support it could not be secured except by a bill of discovery or through interrogatories under the statute. These cases belong clearly to the third class defined above, and they proceed simply upon the ground that the complainant was negligent in and about making his defense at law, for that he should have taken the necessary steps to procure the testimony essential thereto, either by filing interrogatories to his adversary, or by filing a bill of discovery against him before going to trial in the action at law. They can have no bearing upon a case such as this, where the defense is purely equitable, and not available at all at law. The remaining cases and texts cited by appellee are merely declaratory of the rule applicable to cases in which the complainant had a legal defense against the judgment he seeks to enjoin, and are not pertinent to the case at bar. It is believed that no case can be found which holds that a defendant at law, having only a purely equitable defense to the cause of action stated in the complaint, is barred of his equity by the mere fact that he defers filing his bill until judgment has been entered against him at law. To the contrary, it would seem that this court, at least, is committed to the doctrine, that in such case the pass-

ing of judgment against the defendant is wholly without effect upon his right to effectuate his equity.    Thus it is said in *Jordan v. Loftin*, 13 Ala. 550 :    "The rule is well settled, that to entitle a party to relief in a court of equity against a judgment at law, when his defense could be made in a court of law, he must show that he has been prevented from making his defense, either by the fraud of the opposite party, or by some accident unmixed with any negligence on his part.    But if his defense could not be made at law, equity may interfere, and afford relief ; and the rendition of the judgment at law will not close the door of relief against him."    So in *Caloway v. McElroy*, 3 Ala. 406, it is said :    "An unsuccessful attempt to defend at law, when no defense could there be made, under the circumstances of the case, will not preclude a party from relief in a court of equity," by injunction of the judgment at law.    And in *McClure et al. v. Caldough et al.*, 5 Ala. 25, it is held, that "when a judgment at law is obtained against one who, notwithstanding, has an equitable defense, and he sues out a writ of error to reverse the judgment at law, he is not thereby precluded, after its affirmance, from seeking relief in equity."    And in *Howell v. Motes*, 54 Ala. 1, it is said :    "An unsuccessful attempt, or an entire omission, to assert in a court of law, a purely equitable defense, does not prejudice the right to relief in equity," citing *Caloway v. McElroy*, *supra*, and *Nelson v. Dunn*, 15 Ala. 502.    These authorities are conclusive against appellee's contention, that the complainant was *estopped* by the judgment at law upon the contract as written to afterwards say that it had that form only in consequence of the mutual mistake of the parties to it, and that the said agreement of the parties was materially different from that evidenced by the writings, and invoke equity jurisdiction to a reformation of the writings, so that they should set forth the terms upon which the minds of the parties really met; terms which would not authorize or support the judgment rendered.    They— the cases last referred to—also go far to overturn appellee's further contention, that complainant was guilty of *laches* in waiting until after judgment to move for a reformation of the contract, when he might have proceeded to that end before judgment rendered.    But our conclusion against this latter insistence of appellee need

not be rested on those cases. There are at least two others in our own books which go directly to support the bill against the charge of *laches* made by the demurrer, and which involved facts substantially those of the present case for all the purposes of applying to them the principles which obtained in them and must obtain in this. *Stone v. Hale*, 17 Ala. 557, is one of them. That was a bill to reform a deed, so that it would vest the property to the sole and separate use of a wife according to the intention of the parties to it. The immediate occasion for this relief grew out of the facts that creditors of the husband had levied upon the property under a judgment against him, the trustee in the deed had interposed a claim to the property on the assumption that the husband had no interest in it, and this claim suit was decided below in favor of the trustee. On appeal to this court, however, that judgment was reversed on the ground that the deed was not exclusive of the husband's interest, that it did not convey the property to the wife's sole and separate use.—*Hale v. Stone*, 14 Ala. 803. It is true that no final judgment had at time of bill filed been rendered in the claim suit; but the rights of the parties at law had been as fully settled by the reversal of the judgment in favor of the trustee and the remandment of the cause, on the ground stated in the opinion, as they would have been by a final judgment; and it only remained for a formal judgment to be entered as matter of course in the primary court. And upon this state of facts, this court held that the complainant had not been guilty of *laches* in delaying to file his bill for reformation until the rights of parties under the deed as written had thus been determined and fixed.

The other case is that of *Bryan v. Cowart*, 21 Ala. 92. The object of the bill in that case was to reform a deed by inserting a defeasance upon the payment of money, thereby converting it into a mortgage, and to enjoin a judgment at law which had been recovered as for purchase money constituting the consideration of the deed. The bill showed that complainant, who was the grantee in the instrument and defendant in the action at law, sought to prove in that action that the paper was not a deed, but a mortgage, and hence that he did not owe the plaintiff as for purchase money of the land, but this

[Stevens v. Hertzler.]

attempted defense was ruled out by the court. A motion to dismiss the bill for want of equity was overruled by the chancellor; and upon this ruling this court, by LIGON, J., said: "The chancellor did not err in refusing to dismiss the bill for want of equity. In its form, structure and matter, it is not alone a bill to enjoin a judgment at law; but it contains allegations on which it seeks relief, that could only be sought in, and extended by a court of equity. On this motion all the allegations of the bill are admitted to be true. These assert, in terms or effect, that the deed from McPhail to Cowart and Bryan, though absolute on its face, was intended by the parties to operate as a mortgage, and one object of the bill is to have it so declared, and to obtain a decree of foreclosure. A court of equity is the only forum which can hear and determine such matters, and having jurisdiction for this purpose, it may rightly take it for the purpose of doing complete justice between the parties; and, if, to accomplish this end, and to prevent oppression and injustice, an injunction was necessary, it would not hesitate to grant one.

"*This case is wholly different, when viewed in all its aspects, from that large class of cases to which we are cited by the counsel for the plaintiffs in error, and which determine the rules that govern the conduct of the chancellor, in granting injunctions to judgments at law, for the purpose of enabling the defendant to wage, in equity, a legal defense, which he had been prevented from setting up on the trial at law by fraud, or accident, or the act of the opposite party, unmixed with any fault or negligence of his own.*" (The italicization is ours).

We think we need say no more in support of our conclusion, that where a defendant at law has, as Stevens had, a purely equitable defense, which the court of law can not recognize or enforce, and especially when he is entitled to some affirmative equitable relief—as the reformation of a writing—which will clothe him with a legal right, *laches* are not imputed to him in consequence of, nor is he estopped by, the mere fact that judgment passes against him at law before he invokes the powers of equity to a reformation of the writing and an injunction of further proceedings at law.

Something is said in the case about complainant's acquiescence in the construction put on the contract by the

[Moore *et al.* v. Tate.]

plaintiff at law, or in the binding efficacy of the contract as written. We do not find that aught of this is disclosed by the bill. To the contrary, complainant has always insisted, in season and out, that the contract made between him and Hertzler did not bind him to pay for the latter's shares of stock.

The bill was not open to the objections made by the demurrer and motion to dismiss for the want of equity. The decree sustaining the demurrer and the motion and dismissing the bill, is reversed. A decree will be here rendered overruling the demurrer and motion to dismiss; and allowing the respondent thirty days in which to answer the bill. The cause is remanded.

Reversed, rendered and remanded.