# Hertzler, Jr. v. Stevens.

*Bill to Reform Written Contract and to Enjoin Judgment at Law.*

1. *Written contract construed; exercise of option to purchase.* Where a party takes a written option to purchase stock at a given price within a given time, and subsequently receives the certificate of stock upon an agreement in writing to pay for it or return it within the time named, the latter agreement is an exercise of the option to purchase the stock on the terms specified; and the option contract is thereby changed so as to require the purchaser to do an affirmative act within the time specified—either to pay for the stock or return it.

2. *Reformation of instruments; measure of proof required.*—The court of equity, in the exercise of its jurisdiction to reform written instruments on the ground of mistake, proceeds with the utmost caution; the burden of proof is on the complainant to show by evidence that is clear, exact, convincing and satisfactory, that the written contract does not express the true agreement between the parties; if the proof is uncertain in any material respect, it will be held insufficient; until the mistake is made to appear beyond reasonable controversy, the writing must remain the sole expositor of the intent and agreement of the parties.

3. *Writing reformed only when it deviates from the intention of both parties; misunderstanding fatal to relief.*—In all cases for the reformation of written instruments, unless the mistake is admitted, the proof must be clear, exact and satisfactory, first, that a mistake exists—that the writing deviates from the intention and understanding of both parties at the time of its execution; second, what it was the parties intended

the writing should express. An honest difference of under-
standing as to what the contract was, is fatal to relief.

APPEAL from Madison Chancery Court.
Tried before Hon. WM. H. SIMPSON.
The case is stated in the opinion.

R. W. WALKER, and TANCRED BETTS, for appellant,
cited, *Moore v. Tait,* (Ala.) 21 So. 820; *Smith v. Allen,*
102 Ala. 406; *Tyson v. Chestnut,* 100 Ala. 571; *Camp-
bell v. Hatchett,* 55 Ala. 548; *Alexander v. Caldwell,* 55
Ala. 517; *Clark v. Hart,* 57 Ala. 390; *Dexter v. Ohlander,*
97 Ala. 476; 2 Pom. Eq. Jur. 859; *Howe v. Birmingham
Land Co.,* 92 Ala. 390; *Johnson v. Rogers,* 112 Ala. 581.

HUMES, SHEFFEY & SPEAKE, and FRANCIS G. CAFFEY,
*contra,* cited, 1 Brick. Dig. p. 681, §606; 21 Ala. 252;
17 Ala. 557; 11 Ala. 187; 18 Ala. 682; 97 Ala. 476;
*Moore v. Tate,* 114 Ala. 582; *Orr v. Echols,* in MSS;
*Trapp v. Moore,* 21 Ala. 693, 698; *Hemphill v. Moody,* 64
Ala. 473, 474; *Stevens v. Hertzler,* 22 So. 121; 1 Story's
Eq. Jur. 162; 3 Brick. Dig. p. 430, §347; 21 L. R. A. 645;
5 Wallace, 689, 699; 13 Peters, 89; 15 Wallace, 94; 95 U.
S. 23; 11 Am. & Eng. Encyc. of Law, 376, and note 5; *Ib.*
p. 368, and note 4, p. 369, and note 5; 24 Am. St. Rep.
587; 29 Am. Dec. 543; 67 Am. Dec. 75; 94 Am. Dec. 671;
2 Rice on Evidence, pp. 793, 795; Starkie on Evidence,
p. 873; *Stix v. Keith,* 85 Ala. 470; *Roden v. Brown,* 103
Ala. 324; *Ohlander v. Dexter,* 97 Ala. 479; *Wailes v.
Howison,* 93 Ala. 378; *Brice v. Ins. Co.,* 55 N. Y. 240;
s. c. 14 Am. Rep. 251; 5 L. R. A. 712, note.

HARALSON, J.—On the 8th January, 1894, Henry
P. Turner, James R. Stephens, Jr., William Burritt, H.
& C. L. Toney, a partnership, and John Hertzler, Jr., the
appellant, each owning 49 shares of the stock of the
Hagey Hospital Association of Texas, a corporation
organized under the laws of that state, agreed with, and
obligated themselves to James R. Stephens, that they
would, at any time within three months from that date,
sell, transfer and deliver to him, their respective shares
of stock in said association, at and for the sum of
$25.92 per share, stipulating, that in the event the
said James R. Stephens should not avail himself of the

option within the time specified, then the contract was to be void, and all parties to it discharged from any liability on account thereof.

This contract was plain and unambiguous. It was a mere option in said James R. Stephens to buy said stock, from each of the said shareholders, at the price named at any time within three months from its date. He was under no obligation to give notice within the time, whether he would exercise the option or not. If he failed to do so, the contract by its own terms was abrogated. If he exercised the option, and paid the stipulated price, the stock became his. If he made money by purchasing, it belonged to him, and he was at liberty to exercise the option, as to any one or all the stockholders, at any time he chose to do so, within the three months' limitation for its exercise.

On the 16th of January, 1894, said Stephens executed the following receipt to the appellant: "Huntsville, Ala., January 16th, 1894. Received of John Hertzler, Jr., (49) forty-nine shares of the capital stock of the Hagey Hospital Association of Texas, to be paid for as per terms of a contract duly signed by said Hertlzer, Jr., dated January the 8th, 1894, or the said forty-nine shares of stock to be returned by me to said Hertzler, within the time specified in said contract. J. R. Stephens. Witness, Erskine Mastin."

This writing was plainly an exercise of said option by said Stephens to purchase appellant's said stock on the terms therein specified, viz., that he should pay for it or return it to said Hertzler, Jr., within three months from the 8th day of January, 1894, the date of the contract of option. The option contract was thereby changed between said parties, and by the terms of the last agreement, Stephens was to do an affirmative act within the time specified—either pay the specified amount of the stock, or return it to Hertzler. He failed to do either. Hertzler sued him at law, and recovered a judgment. He appealed to this court, and the judgment was affirmed.—*Stephens v. Hertzler,* 109 Ala. 423.

Thereupon, Stephens filed the present bill, to enjoin the collection of said judgment and to reform said contract of the 16th January, 1894, alleging in substance, that at the solicitation and request of said

parties signing said option contract, including Hertzler, the complainant, without consideration, agreed to try and effect a sale of their stock for them on a visit he was contemplating making to Texas for the purpose; that he took said option contract as an accommodation to said parties, and in the interest of his son, J. R. Stephens, Jr., who owned a block of the stock, and with no view of making money out of it himself; that it was with this purpose he consented to try to effect a sale of said stock in Texas and accepted said option with this understanding; that in pursuance of this suggestion made by the said parties who signed the option, he received said stock, agreeing that he would take it with him to Texas, and if he was enabled to make sale of it, he would account to them for the proceeds of the sale, and if he failed to make sale of it, he would return the stock to them; that to carry out this intention and understanding, and as an evidence of the receipt of it by him, he gave the defendant, Hertzler, the receipt for the stock copied above, with the understanding between him and Hertzler that he was to be liable for the stock only in the event of his making a sale of it during his visit to Texas, but that through a mistake the paper he executed did not express the agreement and understanding between them, etc.

The bill was demurred to on various grounds, and a motion was made to dismiss for want of equity. The court sustained the demurrer, and granted the motion to dismiss. On appeal, we reversed that decree, and rendered one, overruling the demurrer and motion to dismiss, and allowed defendant thirty days in which to answer.—*Stephens v. Hertzler,* 114 Ala. 563.

Hertzler answered, making positive denial of the material allegations of the bill. He denied that there was any contract other than evidenced by the writings.

The chancellor, on final hearing, granted the relief prayed for, and this decree is assigned as error. It is altogether a question of fact, therefore, as governed by the rules of law in such cases, whether the decree of the court shall be affirmed or not.

It is important for the proper determination of the cause, to make reference to the well established principles governing the reformation of contracts on account of alleged mistakes in their execution.

In *Campbell v. Hatchett,* 55 Ala. 551, it was said: "The court, in the exercise of its jurisdiction (to reform written instruments on account of mistake or fraud in their execution) proceeds with the utmost caution, as it involes the invasion of a salutary rule of evidence prevailing at law and in equity. In all cases, unless the mistake is admitted, it must be proved by clear, exact, and satisfactory evidence, that the mistake exists—that the writing deviates from the intention and understanding of both parties at the time of its execution—or the court will decline to interfere."—*Ohlander v. Dexter,* 97 Ala. 476.

In *Guilmartin v. Urquhart,* 82 Ala. 571, the court said: "To authorize the reformation of a contract which has been reduced to writing and signed, the proof must be clear, exact and satisfactory—first, that the writing does not express the intention of the parties—that on which their two minds had agreed; and, second, what it was the parties intended the writing should express."

The burden in such cases is always on the complainant to show by evidence that is clear, exact, convincing and satisfactory, that the written contract does not express the true agreement between the parties.—*Moore v. Tate,* 114 Ala. 582. If the proof "is uncertain in any material respect, it will be held insufficient; and while the courts may feel a great wrong has been done, they can grant no relief by reason of uncertainty."—*Alexander v. Caldwell,* 55 Ala. 522; *Berry v. Sowell,* 72 Ala. 17.

"The authorities," says Mr. Pomeroy, "all require that the parol evidence of the mistake, and of the alleged modification, must be most clear and convincing,　*　* * or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of the error."—2 Pom. Eq. Juris. §859.

"Until beyond reasonable controversy, the mistake is made to appear, the writing must remain the sole expositor of the intent and agreement of the parties."—*Hinton v. Insurance Co.,* 63 Ala. 488; *Smith v. Allen,* 102 Ala. 406.

If the case were tried alone upon the evidence submitted by appellee, it may be the proof would authorize the relief prayed. Touching the alleged mistake in the execution of said receipt to Hertzler for the stock, of date 16th January, 1894, complainant testified, that in a conversation he had with defendant at the time he gave the receipt, he stated that his object in taking the stock with him to Texas was, to be able to deliver it promptly in the event of a sale; and if he could not do anything with it—could not make any sale of it—he would return it to defendant, and that the object in giving the receipt was to show that he had the stock and what he was to sell it at, if he found a buyer. Erskine Mastin, who witnessed the signature of Stephens to the receipt, testified that he knew nothing about the contract between the parties in regard to a sale of the stock; that he knew nothing of the transaction between Stephens and Hertzler; was too far off and paid no attention to what they were saying, but that when he came to witness the signature, he casually heard Stephens say, that when he returned from Texas, he would bring the money or return the stock.

The complainant examined also, Harris and Charles Toney and Henry P. Turner, parties in Alabama, who, besides Hertzler, signed the option contract, and to whom complainant, afterwards, gave receipts, the one to the Toneys, on the 18th January, 1894, and the other to Turner, on the 22d January, 1894, in each of which it was specified, that the stock was to be taken at the price named in the option contract signed by them, or said stock returned in the time specified. The proof showed that Turner's stock was returned to him on the 12th May, 1894, and the Toneys' at some time after the expiration of the 90 days mentioned in the option. As to these parties, proof was admitted, whether properly or not, we need not decide, that as to them, they understood the transaction to be as the complainant construed it. The defendant's receipt for his stock, however, from Stephens, was given at a different time, and this transaction between Stephens and the other parties, if admissible for any purpose against Hertzler, was not necessarily the same transaction as the one with Hertzler, unless it were shown, they all agreed beforehand, that they would deliver their stock to Stephens, for the same purposes

and on the same terms, and the receipts were afterwards given in execution of this common understanding; or, in other words, that the contract between each and all of them with Stephens was the same. Defendant's receipt from Stephens specified, by its terms, that his stock should be paid for as per terms of the option contract, or returned within the time therein specified. It is proper to state, in this connection, that Stephens' own evidence tends to show that he made, and defendant understood him as making the same contract with him, that he made with these other parties. But the defendant denies that he had any connection with the other parties as to this matter, and he deposes that he made no other contract with Stephens than the one disclosed on the face of the papers. It reasonably appears he did not solicit Stephens to take an option on said stock for his, defendant's benefit, as is averred in the bill, but that he gave it at the solicitation of Stephens, who had the option drawn up by an attorney, and presented it as drawn to defendant for execution. And, as for the receipt afterwards given by Stephens to defendant for his stock, it is plainly enough shown, that defendant did not propose its giving or dictate its terms. Stephens himself testified: "I wrote the receipt without any suggestion as to the wording of it from John Hertzler, Jr., and intended it to read the same as the other receipts given (to the Toneys and Turner), as the condition that I took the stock was the same as that when I took the stock of Henry Turner and the Toneys, and without thinking of the legal bearing the words of the receipt gave it." We have seen that the only difference between Hertzler's receipt and the ones given to the other parties is, that in Hertzler's the stock was to be paid for by Stephens at a certain price, or returned to Hertzler within the time specified in the option; and in the others that the stock was "to be taken at the price named in the (option) contract signed" by the parties to it, respectively, or the stock was to be returned in the time specified therein. The words "taken" and "paid for," as employed in the different receipts, amount to the same in legal effect. If the paper to defendant had read, that Stephens should, within the time specified, *take* the stock or return it to defendant, and he failed to return it within the ninety days, his obligation on the face of the paper, to

pay for it at the stipulated price, would have been complete, but not less so, than when he employed the words "paid for" therein. This much of Stevens' evidence tends to show that he made no mistake in drafting his receipt to defendant.

If we accord to complainant, as we do, an honest intention in executing said paper, as he alleges it in his bill, and to his proof, all he claims for it, yet on the other hand, we are confronted with a denial in defendant's answer of the alleged mistake and by his clear and unmistakable testimony, that no such mistake as that set up was made in the execution of said contract, but that the real and only understanding between him and the complainant was that imported on the face of said papers. This leaves us— conceding to the respective parties equal honesty of intention and purpose—without that clear, exact, convincing and satisfactory evidence upon which the relief sought may be properly granted. This conclusion is inevitable, if we do not discard the defendant's evidence, and adopt that of complainant as true, which we are not permitted to do. We prefer to accord equal veracity to each of the parties, and believe there existed an honest difference of understanding between them, which is fatal to the bill.

The complainant and defendant differ in their testimony as to some details respecting the time and place of the execution of the option contract, and in some other particulars not of controlling importance, all reconcilable on the score of infirmity of memory on the part of one or both of them, and which it would serve no good purpose to discuss at length, as counsel have done.

A decree will be here rendered, dissolving the injunction granted, reversing the cause and dismissing the bill.

Reversed and rendered.